Parkman's Adm'r v. Aicardi & Tool.

## PARKMAN'S ADM'R *vs.* AICARDI & TOOL.

34  393
143  203
e143  204

[BILL IN EQUITY TO RESTRAIN TENANT FROM SUB-LETTING HOUSE.]

1. *When equity will restrain lessee from sub-letting premises.*—A court of equity will restrain the lessee of a store, which had been rented and used by him as a drug-store, from sub-letting the premises to another to be used for retailing spirituous liquors, when it appears that, although the contract of lease did not restrict the use of the house to any particular business, the lessee fraudulently applied for a renewal of his lease in his own name, after having agreed to sub-let the house to a licensed retailer, because he knew that the landlord would not lease the premises for that purpose.

2. *When administrator of insolvent estate may sue.*—The administrator of an insolvent estate, whose intestate had an undivided half interest as tenant in common in a block of stores, may maintain a bill in equity against the lessee of one of the stores, to restrain am improper sub-letting, which would impair the value of the property, and diminish the amount of the rents.

3. *Non-joinder of parties plaintiff.*—Conceding that a surviving tenant in common in land should be joined as co-plaintiff with the administrator of his deceased co-tenant, in a suit instituted by the administrator, yet his absence from the State is a sufficient reason for making him a defendant.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Mrs. Maria R. Parkman, as the administratrix of the estate of her deceased husband, Elias Parkman, against Aicardi & Tool, A. E.

Bayol, and Thornton B. Goldsby; and sought to enjoin the defendant Bayol from sub-letting to his co-defendants, Aicardi & Tool, a certain storehouse in the city of Selma, which he had rented from said Goldsby, and which belonged jointly to said Goldsby and Elias Parkman. The storehouse in controversy formed part of a large block of stores, which Goldsby had erected on lots belonging to Parkman, under a contract by which it was agreed that they should be equally interested in the stores. At the death of Parkman, in October, 1853, the stores were not entirely finished, but were shortly afterwards completed by Goldsby, in accordance with the terms of his contract with Parkman. The entire first floor of the building was fitted up for storehouses, all of which were rented and used for that purpose; the rooms on the second floor being fitted up for lawyers' offices, sleeping apartments, &c., and being rented and occupied for those purposes. The corner store of the block was fitted up for a drug-store, and was rented to L. F. Bayne & Co., druggists, for the year ending on the 1st October, 1857, and was used by them as a drug-store. The bill alleged, that before the expiration of the tenancy of said L. F. Bayne & Co., Bayol, who was a member of that firm, applied to Goldsby for a renewal of their lease for another year; that Goldsby, supposing that they intended to use the premises as before, consented to the renewal of the lease; that Bayol made this application in his own name, at the instance of Aicardi & Tool, for the express purpose of re-letting the premises to them, to be used by them as a retail grocery for the sale of spirituous liquors, and because he knew that neither Goldsby nor the complainant would consent that the premises should be so used; and that the use of the premises by Aicardi & Tool, for the purpose specified, would be a nuisance to the neighborhood, would cause irreparable injury to the premises, would impair the value of the adjoining stores and offices, and would diminish the rents. It was further alleged in the bill, that the estate of Parkman had been declared insolvent; that Bayol was insolvent; and that Goldsby was absent from the State.

The chancellor dismissed the bill, on motion, for want of equity ; and his decree is here assigned as error.

BYRD & MORGAN, for the appellant.—1. Conceding the principle, that a tenant has the right, under a general lease, to sub-let the premises to another, to be used for any ordinary purpose ; yet, if Bayol combined with Aicardi & Tool to get a renewal of his lease for them, and procured such renewal by a fraudulent pretense or concealment of his purpose, this will vitiate the contract, if it appears that the concealed purpose for which the premises were to be used was in any degree injurious.—Coffin v. Scott, 7 Rob. (La.) 205 ; Bounett v. Sadler, 14 Vesey, 526.

2. The injury to the premises, which would result from their conversion into a grocery for retailing spirituous liquors, is alleged to consist in these facts : that the house is fitted up for a drug-store, and it would require considerable expense to refit it after it had been used for the other purpose ; that the value of the premises as a good stand for a drug-store would, be impaired ; that the value of the adjacent stores, and of the offices in the second story, as well as the annual rents, would be greatly lessened ; and that a retail grocery, in such a place, would be a nuisance, and would cause irreparable injury to the property in the neighborhood. The court will judicially know that there are material differences between the business of keeping a drug-store and the business of keeping a retail grocery,—such differences that a house rented for one purpose cannot be used for the other.—Nave v. Berry, 22 Ala. 382 ; McGhee v. Hill, 1 Ala. 140.

3. The complainant had the right, and it was her duty, to see that no injury was done to the property by the act of her co-tenant or his lessee.—Maddox v. White, 4 Md. 72 ; 4 Sandf. Ch. 587 ; 1 Story's Equity, §§ 913–14.

GEO. W. GAYLE, contra.—1. When the lease does not restrict the use of the premises, the lessee has an implied right to use them for any legal purpose, or to sub-let them to another to be so used.—Outlaw v. Cook, Minor, 257 ;

Perry v. Hewlett, 5 Porter, 318; Seay v. Marks, 23 Ala. 532; Railroad Co. v. Burke, 27 Ala. 535; Harris v. Maury, 30 Ala. 679; 1 Bibb, 536; 14 Vesey, 526; 4 Sandf. Ch. 587. That retailing is lawful, see *Ex parte* Burnett, 30 Ala. 468.

2. The lease being for only one year, the bill cannot be maintained on the ground of irreparable injury.—1 Story's Equity, § 925; 16 Vesey, 342; Rosser v. Randolph, 7 Porter, 238; Lynes v. Ray, 10 Ala. 63.

3. The complainant, as the administrator of an insolvent estate, has no right to maintain the suit.—Patton v. Crow, 26 Ala. 432; Long v. McDougald, 23 Ala. 413; Chighizola v. LeBaron, 21 Ala. 402; Code, § 1751.

R. W. WALKER, J.—In the case of Nave v. Berry, 22 Ala. 390, this court said, in substance, that when the contract of lease is silent, the law implies an obligation on the part of the lessee of a house not to put it to a use materially different from that for which it was constructed, and to which it is adapted and has been usually appropriated. It is an old principle of the common law, that a tenant is guilty of waste, if he materially changes the nature and character of the building leased. Thus, it is held, that he cannot convert a corn-mill into a fulling-mill, or a water-mill into a wind.mill, or a log-wood-mill into a cotton-mill, or a dwelling-house into a warehouse, or a brewhouse into an office.—Bridges v. Kilburn, 5 Vesey, 689; Kidd v. Dennison, 6 Barbour, 13; Jackson v. Andrews, 18 Johns. 433; 1 Eden's Inj. 186, and notes; Addison on Contr. 380; Shepard v. Briggs, 26 Vermont, 449. And many authorities, both English and American, declare that such changes will be deemed waste, even though the value of the property would be enhanced by the alteration.—Authorities *supra*; also, 11 Metc. 304.

A court of equity will restrain the lessee, or his sub-lessee, from making such material alterations as would change the nature of the building.—Douglass v. Wiggins, 1 Johns. Ch. 335; Bonnett v. Sadler, 14 Vesey, 526; 2 Story's Eq. § 913; Maddox v. White, 4 Md. 72.

In the view we take of this case, we need not inquire

whether the use of the room in question as a place for retailing spirituous liquors, and the changes in its internal arrangements necessary to prepare it for such use, would constitute such a material alteration of the nature of the building, such a wide departure from the use for which it was erected, and to which it has been usually appropriated, as would, of itself, justify the exercise of the preventive power of a court of chancery. We prefer to rest our decision upon other and much less doubtful grounds.

In the exercise of the inherent power which it possesses in cases of fraud, a court of chancery will interfere by injunction, to prevent a party from availing himself in any manner of a right or title arising out of a breach of contract, trust, or confidence.—Prince Albert v. Strange, 1 McNaghten & Gordon, 25, (cited in 3 Chitty's Eq. Dig. 2274, § 3;) Norway v. Rowe, 19 Vesey, 154.

It appears from the bill, that at the time Bayol rented the house from Goldsby, the relation of landlord and tenant existed between them; a relation which, in the estimation of a court of equity, so far partakes of a fiduciary character, that in all transactions between the parties in reference to the property, the utmost good faith is required. "If there is any misrepresentation, or any concealment of a material fact, or any just suspicion of artifice or undue influence, courts of equity will interpose and pronounce the transaction void, and, as far as possible, restore the parties to their original rights."—1 Story's Eq. §§ 218, 323; Willard's Eq. 170, 189.

Bayol rented the house for the purpose of sub-letting it to Aicardi & Tool, to be used by them as an establishment for retailing spirituous liquors. He did not disclose to Goldsby the use to which he meant to appropriate the house, and must, under the circumstances, have known that Goldsby supposed it was to be occupied for the same purposes as under the former lease. It is further alleged, that Bayol well knew at the time he obtained the lease, that if the purpose for which the house was really rented should be disclosed to Goldsby, the contract would not be made; and it is shown that it was at the instance of

Aicardi & Tool that Bayol rented the house in his own name, and failed to make known to Goldsby the purposes for which it was wanted.

Assuming that the history of these transactions furnished by the bill is correct, whatever right Aicardi & Tool have acquired has been obtained by an abuse of confidence, and is the fruit of a fraudulent combination between themselves and Bayol, formed for the purpose of entrapping Goldsby into a bargain, which they knew he would not have made, if advised of the secret intentions of the parties. If they are permitted to assert and enjoy the right thus acquired, the result will be, that the value not only of this particular apartment, but of other rooms in the same tenement, for the special purposes for which they have been erected, prepared, and used, will be materially impaired. While it is undoubtedly true, that a *licensed* retail grocery has the express sanction of law, and therefore cannot be pronounced *per se* a nuisance; yet we cannot so far ignore matters universally known, as not to take notice of the fact, (of which there is indeed an express allegation in the bill,) that the occupation of a house for the purpose of retailing spirituous liquors has a tendency to render the adjoining rooms less desirable, and therefore less valuable as dry-goods and book-stores and lawyers' offices. It may be that the injury in the case would not be irreparable; nor, under the circumstances alleged, need it be. The equity of the bill rests, not upon the ground of nuisance or irreparable injury, but upon the inherent right of a court of chancery to prevent a party from asserting rights arising out of a violation of fiduciary duties, or procured by a fraudulent combination. Under the circumstances disclosed by this bill, we have no doubt of the right of Goldsby to an injunction restraining the parties from taking possession.—Bonnett v. Sadler, 14 Vesey, 526–7; Coffin v. Scott, 7 Robinson, 205; Att'y Gen'l v. Aspinall, 2 Myl. & Cr. 613, 625; Prince Albert v. Strange, *supra*; Norway v. Rowe, *supra*; O'Herlihy v. Hedges, 1 Sch. & Lefr. 123.

2. It remains to be considered, whether the complainant has such an interest in the subject-matter of this suit,

as gives her a title to relief. It was held before the Code, that the administrator of an insolvent estate cannot recover the possession of lands belonging to the estate by action at law.—Long v. McDougald, 23 Ala. 419; Patton v. Crow, 26 Ala. 412. This is now changed by statute.—Acts '57–8, p. 298. If the facts are as the complainant alleges, the estate represented by her had an undivided half-interest in this property, and a right to one half of the rents accruing before or after the death of the intestate. It is the duty of the administratrix to collect the share of the rents to which the estate is entitled, and to sell its undivided interest in the property. Whatever, therefore, would injure the value of the property, or lessen the rents, would diminish the assets of the estate. The bill shows, then, that the assets of the estate, which the complainant is to administer for the benefit of creditors, will be materially reduced, if the defendants are allowed to enjoy the right which they assert. This is an interest which a court of equity will recognize and protect.—2 Story's Eq. § 914.

3. While at law, all persons having a joint interest must join in the action as plaintiffs; in equity, the general rule is, that it is sufficient if all the parties interested in the subject of the suit are before the court, either as plaintiffs or defendants.—1 Dan. Ch. Pr. 273. If it be assumed that the present case is an exception to this rule, and that Goldsby should have been joined as a complainant, unless a sufficient excuse is shown for not doing so, we think that his absence from the State constitutes such excuse. See Morse v. Hovey, 9 Paige, 197.

The questions arising upon the demurrer were the only questions considered by the chancellor, and we have confined ourselves within the same limits. We think that the chancellor erred in sustaining the demurrer and dismissing the bill.

The decree is reversed, and the cause remanded.