# McDaniel *v.* Callan.

*Bill in Equity to restrain Lessee in Possession from Commission of Waste, and a Violation of Covenants of Lease.*

1. *Injunction against waste by tenant in possession ; what necessary to relief.*—While a court of equity has, and will fully exercise its preventive jurisdiction, by injunction, to protect the reversion against waste by the tenant in possession, it will not interfere, unless it is shown that a positive injury to the premises, repugnant to the terms of the lease, or a positive misuse of the premises, or their conversion to uses unauthorized, is contemplated and reasonably apprehended.

2. *Same.*—Hence, where, by the terms of the lease, the tenant is not only expressly authorized, but is required, as one of the considerations moving the landlord in its execution, to reduce to cultivation during the term uncleared portions of the demised premises, a court of equity will not intervene by injunction to restrain him from cutting down timber on the lands, for the purpose authorized by the lease.

3. *When covenant in a lease runs with the land.*—A reservation in a

lease of lands which are largely, if not wholly uncleared and unimproved, to the lessee, of the right to the use and occupation, for a designated period, of such parts of the premises as he may reduce to cultivation, or clear during the term, like a covenant for quiet enjoyment, or a covenant to cultivate the land in a particular manner, or a covenant for the renewal of the lease, runs with the land, and is binding upon the assignee of the reversion.

4. *Lease; special provision for its termination construed.*—Under a stipulation in such lease that, in the event of a sale of the demised premises by the lessor during the term, the lessee should surrender the possession on "being paid a reasonable valuation for the unexpired term," a mere sale and conveyance of the premises by the lessor do not operate a determination of the lease; but the stipulation merely reserves to the purchaser, or the assignee of the reversion, the privilege or option of determining the lease, upon a performance of the condition expressed—the payment or tender to the lessee of the reasonable value of the unexpired term; and, until such payment or tender is made, the lessee has the right to the unmolested use and enjoyment of the premises, and the right to continue the clearing, or reduction to cultivation, of the lands, according to the terms of the lease.

5. *Cross-bill; when properly dismissed.*—A cross-bill not seeking a discovery, and making no defense which is not equally available by answer, should be dismissed; hence, it was held that the decree dismissing the cross-bill filed in this cause was free from error.

APPEAL from Cherokee Chancery Court.

Heard before Hon. N. S. GRAHAM.

The bill in this cause was filed on 5th December, 1878, by A. J. Callan and P. A. Callan against Fleming McDaniel, to restrain the defendant, who was in the possession of certain lands, as the lessee of one Milly Smith, from the commission of waste, and from a violation of the covenants of the lease, which was executed on 9th April, 1878, and is made an exhibit to the bill. The complainants claim by purchase from the lessor, made on 14th November, 1878, she executing to them a bond for title. By amendment the said Smith was made a party defendant to the bill. Both defendants answered, and McDaniel prayed that his answer might be taken and considered as a cross-bill, and that, upon final hearing, he be decreed compensation for the value of the unexpired term of the lease. The material provisions of the lease and the other facts disclosed by the record, necessary to an understanding of the points decided, are sufficiently stated in the opinion. The lease will also be found copied at length in the report of the case of *Callan v. McDaniel,* 72 Ala. 96.

On the hearing, had on pleadings and proof, a decree was entered granting relief to the complainants in the original bill, and dismissing the cross-bill; and that decree is here made the basis of the assignments of error.

McSPADDEN, CARDON & BENNETT, for appellant.

WALDEN & SON, *contra.*

BRICKELL, C. J.—The bill is filed by assignees of the reversion to restrain the lessee in possession from the commission of waste, and from a violation of the covenants of the lease. The preventive jurisdiction of a court of equity, through the aid of an injunction, is freely exercised to protect the reversion against waste by the tenant in possession, whether the waste may consist in an actual abuse of, or injury to the premises, or in their misuse, or in their conversion to uses prohibited by, or repugnant to the terms of the lease.—1 High on Injunctions, § 434; *Parkman v, Aicardi*, 34 Ala. 393. The court will also intervene for the protection of the lessor, or of the lessee, in a proper case, against a violation of the express or implied covenants of the lease, thus in effect enforcing specific performance of the contract.—2 High on Injunctions, §§ 1141 *et seq.* But in neither case will the court interfere upon slight or uncertain grounds. Waste, a positive injury to the premises, repugnant to the terms of the lease, or a positive misuse of the premises, or their conversion to uses unauthorized, must be shown to be contemplated and reasonably apprehended, or the court will abstain from interference by injunction. And a breach of the covenants of the lease, intended and about being committed, must be made to appear, if preventive aid is sought, compelling a specific performance of the contract. In neither case will the court interfere for the redress of past injuries, or of past breaches of contract. Compensation in damages, through the medium of an action at law, is the appropriate remedy for waste committed, or for covenants broken, or contracts violated. In such cases, an injunction can not afford relief; it prevents wrongs or injuries which are threatened, for which, if done, the remedy at law is inadequate.

The lease was of premises largely, if not wholly, unimproved, and its continuance was for the term of three years. The consideration moving the lessor in its execution, and the benefit resulting to her was not the payment of pecuniary rent, or of rent in any form. The construction by the lessee of the improvements designated, and the reduction to cultivation during the term of uncleared parts of the premises, is the consideration he was to yield. The first year of the term he was, if practicable, to clear twenty acres, and it was stipulated he should have the use thereof for three years, or for the making of three crops; and there was a like stipulation as to such parts of the premises as he should clear during the succeeding years of the term. The lease thus, in effect, provides for its own continuance as to parts of the premises for a longer term than that which is specified; and the provision was inserted manifestly for the purpose of inducing and encouraging the lessee to the clearing and fitting for cultivation of as large

portions of the premises as was practicable. It was inserted for the mutual benefit of lessor and lessee. But in the event of a sale of the premises by the lessor during the continuance of the lease, the lessee stipulated to surrender possession, " by being paid a reasonable valuation for the unexpired term of said lease," with an exception that he should not be required to surrender possession in the spring of the year, after having made arrangements for a crop.

In a case between these parties at a former term, we held the reservation to the lessee of the right to the use and occupation, for three years, of such parts of the premises as he reduced to cultivation, or, in the words of the lease, *cleared*, like a covenant for quiet enjoyment, or a covenant to cultivate the land in a particular manner, or a covenant for the renewal of the lease, runs with the land, and is binding upon the assignee of the reversion.—*Callan v. McDaniel*, 72 Ala. 96. It is quite a mistake to suppose, as seems to be the theory of the appellees, that a mere sale and conveyance of the lands by the lessor operated a determination of the lease. The purchaser or assignee of the reversion had the privilege or option of determining it, but it was a bare privilege or option that he could exercise or not at his discretion. And he could exercise it only upon the performance of the condition expressed—the payment to the lessee of the reasonable value of the unexpired term. Without such payment, or the tender of it, the lease, with all its covenants and stipulations, remained in full force. The lessee, after such sale and conveyance, until such payment or tender, had the right to the unmolested use and enjoyment of the premises, and the right to continue the clearing or reduction to cultivation of the lands, according to the terms of the lease ; and he was bound to the same duties and obligations which rested upon him before the sale and conveyance was made.

We shall not notice specially the averments of the bill ; it is not clear to us that they impute waste to the lessee. But if such is their effect, the evidence is clear that it had not been committed, nor was it threatened. Waste is the abuse or misuse, or the spoil or destruction of premises by one having possession and the right of legitimate use, and yet has only a qualified or limited title or interest. The use of premises for the purposes specified in the lease, or the destruction of things attached to the realty in accordance with its terms, can not be imputed as waste. The element of wrong is wanting. All that appears from the evidence is, that the lessee, after the sale and conveyance, and after he had notice of it, continued the clearing of the lands, not destroying any other timber, or timber in any other manner, than was necessary for that purpose.

[McDaniel v. Callan.]

There was no offer or tender to him of payment of the value of the unexpired lease, until after the filing of this bill, and the sum then tendered is not shown to be the equivalent of its value; on the contrary, the weight of the evidence is, that it was not a fair equivalent. A court of equity will not interfere against a lessee in possession, using and enjoying the premises in accordance with the terms of the lease, working no spoil or destruction to the reversion, or, if it be spoil or destruction, only that which was contemplated and is authorized.

A cross-bill is, in its very nature, a mode of defense; its purpose is either to obtain a discovery in aid of the defense to the original bill, or to obtain full relief touching the matters of the original bill, or to set up some matter which has arisen after the cause was at issue. A cross-bill not seeking a discovery, and making no defense which was not equally available by answer, should be dismissed.—Story Eq. Pl. §§ 387, 3&3; *Braman v. Wilkinson*, 3 Barb. Ch. 151. The relief claimed by the cross-bill is compensation for the value of the unexpired term of the lease. The original bill, as amended, contains an express offer to pay the value of the unexpired term; and the offer clothed the court with jurisdiction to render a decree compelling the complainants to its payment, if there could have been a decree rendered in their favor.—*Br. Bank Mobile v. Strother*, 15 Ala. 51; *Mooney v. Walter*, 69 Ala. 75. Acting upon its own extensive and beneficial maxim, that he who seeks equity must do equity, the court would not, under the circumstances of the case, have intervened for the relief of the complainants, without imposing, as a condition, that they should observe the terms of the lease, and, if they would determine it, should pay the value of the unexpired term. The court refuses its aid to a party coming in for relief upon a legal right, because of the inadequacy of legal remedies, unless he complies with such conditions as, in the nature of the case, are just and equitable.—1 Story's Eq. § 64a.

The decree of the chancellor upon the original bill must be reversed; and a decree will be here rendered dissolving the injunction and dismissing the bill at the costs of the complainants therein, to be taxed by the register. The decree dismissing the cross-bill must be affirmed; and the costs thereof must be paid by the complainant therein, to be taxed by the register. The costs of the appeal in this court and in the court of chancery must be paid by the appellees, A. J. Callan and P. A. Callan.