HAMBURGER & DREYLING ET AL. v. J. J. SETTEGAST ET AL.

Decided October 24, 1910.

**1.—Lessor and Lessee—Waste—Opening in Party Wall—Injunction.**

The same person was lessee of two buildings which were separated from each other only by a party wall but were owned by different persons; the lessee undertook to cut an opening in the party wall between the two buildings. Held, such act would be waste under the common law doctrine, and, because it would destroy the identity of his building and impose upon it a use in connection with the adjacent building not contemplated or authorized by the contract of lease, and increase the hazard of fire, the owner and lessor of one of the buildings was entitled to an injunction restraining the tenant from making the opening.

**2.—Landlord and Tenant—Waste—Common Law.**

As between landlord and tenant, at common law it was not necessary that the injury to the freehold should be either permanent or irreparable to constitute it technical waste.

**3.—Same.**

It is no justification of an act of waste that the party will at some future time put the premises in the same condition as they were when the lease was made. The landlord has a right to the continuance of the state of things as they existed before the injury was done.

**4.—Same.**

To constitute waste it is not necessary that an alteration in leased premises would diminish the value of the property. The landlord has the right to exercise his own judgment and caprice as to whether there shall be any change in the leased premises.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Lane, Wolters & Storey* and *W. A. Vinson,* for appellants.

*Gibson & Fenn,* for appellees.

REESE, ASSOCIATE JUSTICE.—J. J. Settegast is the owner of a two-story brick building, located on lot 12, block 45, in the city of Houston. Lot 12 is a "key" lot, fronting 50 feet on Prairie Avenue and running parallel with Main Street. The building referred to fronts 50 feet on Prairie Avenue, and runs back 115 feet. Fronting on Main Street is a brick building belonging to Scanlan, the rear of which abuts on the building of Settegast. The Scanlan building is occupied by Foley Bros. as a dry goods store. Between the lower floor of the Scanlan and Settegast buildings is a party wall of the usual thickness. The upper stories of the respective buildings do not rest on this party wall, but upon iron columns and beams set a little in from the party wall, upon which rest the joists of the upper stories, leaving nothing resting upon the party wall. The Settegast building was leased to Hamburger & Dreyling by J. J. Settegast, with privilege of subletting, for a term of ten years commencing July 1, 1905, and ending the 1st day of June, 1915. The building has been used by Hamburger & Dreyling for carrying on the business of a steam laundry. About the 1st of September Hamburger & Dreyling, having moved their laundry business to another part of the city, sublet the Settegast building (except 30x14 feet of the front reserved by them) to Foley Bros. with the understanding that they, Hamburger & Dreyling, were to cut openings through the wall between the building occupied by Foley Bros. and the Settegast building 8 by 9 feet, as a means of access from the one to the other. As soon as he heard of this arrangement for cutting this opening through the wall of his building, J. J. Settegast, joined by his wife, instituted this suit against Hamburger & Dreyling and Foley Bros. to enjoin the parties from cutting through the wall, and obtained a temporary restraining order until the matter could be heard by the district judge in chambers on the application for the temporary injunction, but before service of the restraining order could be had Hamburger & Dreyling had nearly completed the work of taking out the brick for the opening. Upon the hearing of the

application for temporary injunction the district judge granted the writ, and further ordered the defendants, Hamburger & Dreyling, to close up such opening as had been made, replacing the wall as it has existed, and in the event they failed or refused, authorized the plaintiffs to do so. From this order defendants prosecute this appeal.

It was shown that previous to the making of this opening one of the members of the firm of Foley Bros. had approached Settegast with a view of getting his consent to the cutting of the wall to make this opening, which was peremptorily refused, and that most if not all of the work of cutting the wall was done on Saturday night previous to the issuance of the restraining order on the following Sunday.

Evidence was heard, on the hearing of the application for temporary injunction, as to the effect of cutting this opening upon the wall, and upon the danger of fire to the building, and the rate of insurance.

There are no conclusions of fact by the district judge. The evidence shows, and we find, that as this wall did not have to support the wall of the second story and there was nothing resting upon it, the cutting of this opening when completed as contemplated would not materially impair the strength of this wall, and that it would not cost more than $50 or $60 to close the opening and replace the wall as it was before.

It was shown that it was contemplated to put in a fire door of iron, which in the event of fire would close automatically the opening in the wall by means of a contrivance invented for that purpose.

The evidence is rather confusing and somewhat conflicting as to whether the cutting of this opening in the wall, in connection with the automatic fire door, would increase the risk of fire, or tend to raise the rate of insurance. The evidence authorizes the conclusion, and, in support of the judgment, we find, that the cutting of the opening in the wall, even with the fire door in place as contemplated, increased to some extent the hazard from fire to appellee's building in case of fire in the Foley building, either originating there or communicated from elsewhere.

It was the very purpose of the opening to allow both to be used substantially as one building, as if they were two rooms in the same building. The effect of this was to destroy the identity of appellee's building, and to impose upon it a use, in connection with the Scanlan building, not contemplated or authorized by the contract of lease, as well as to impose upon it the additional burden of an increased hazard from fire.

Appellants admit in their brief, and in the argument of their counsel at the bar, that this act would have been waste at common law, but that according to what is spoken of as the "modern rule" it would not. We think this is probably a misuse of terms. The modern rule spoken of seems to be nothing more than the application of the principles of the common law to new and changed conditions, as in the case of Melms v. Pabst Brewing Co. (46 L. R. A., 478.) "These rules (of the common law) are not arbitrary in their nature nor invariable in their application, but from their nature, as well as the necessities in which they

originate, they are and must be susceptible of a modified application, suited to the circumstances under which the application is to be made.". (2 Words and Phrases, 1326, title, "Common Law.")

But what changed conditions have we here which should affect the application of the old common law rule as to waste? From the beginning of the erection of buildings adjoining each other, as in this case, which condition certainly prevailed when the common law was in process of formation, it must have been anticipated, in fact the conditions must often have arisen, when a tenant of two buildings belonging to different owners might desire, and it might have been greatly to his convenience and benefit, to make a common use of the two, and to unite them by an opening from the one to the other, just as in this case.

The case of Melms v. Pabst Brewing Company, *supra,* carries the doctrine contended for by appellant further than any case we have been able to find. In that case it was held not to be waste for the life tenant, without the consent of the reversioner, entirely to remove a large building, built for a residence and not capable of any other use, and to cut down the ground upon which it stood to the level of the adjoining street. It was held that these acts under ordinary circumstances would constitute waste. But the court adds: "The evidence shows that the property became valueless for the purpose of residence property as the result of the growth and development·of a great city. Business and manufacturing interests advanced and surrounded the once elegant mansion, until it stood isolated and alone, standing upon just enough ground to support it, and surrounded by factories and railroad tracks, absolutely undesirable as a residence, and incapable of any use as business property. Here was a complete change of conditions, not produced by the tenant, but resulting from causes which none could control. Can it be reasonably or logically said that this entire change of condition is to be completely ignored, and the ironclad rule applied that the tenant can make no change in the uses of the property because he will destroy its identity? Must the tenant stand by and preserve the useless dwelling·house so that he may at some future time turn it over to the reversioner, equally useless? Certainly, all the analogies are to the contrary."

This but exemplifies the flexibility of the common law. But the only change in conditions in the present case is, that by the act of the original tenants, Hamburger & Dreyling, in subletting to Foley Bros., the occupancy of the two buildings came under one person. This fact can not, as we conceive, make any difference in the rights of the parties in the matter under consideration.

The court in the case referred to cites Brock v. Dole (66 Wis., 142; 28 N. W., 334), as a case calling for the proper application of the doctrine of waste. The facts in that case are thus stated: "The defendant had for three years or more occupied a storeroom in a one-story frame building, which was owned by the plaintiff, adjoining a room occupied as a barbership. There was a chimney on the west side of the barber-

shop adjoining the room occupied by the defendant. A hole had been cut from the room occupied by defendant, and a thimble put into the chimney so that, by means of a stovepipe attached to the chimney, the defendant had warmed his room with a stove. In the summer of 1885 this chimney was condemned by the authorities as unsafe and dangerous, and was taken down by the plaintiff. Another was rebuilt, but was so constructed as not to connect with the defendant's room. He claims that the plaintiff, to prevent him from using it, had placed a piece of sheet iron on the side of the chimney next to his partition. In October the defendant commenced the erection of a chimney upon the inside of his room, cut a hole through the ceiling, and was about cutting a hole through the roof, when the injunction was obtained restraining him from proceeding with the work. There had never been a chimney where the defendant proposed to build one, and the plaintiff did not desire any there." It was held that injunction was properly granted restraining the erection of the chimney. It can not be said that the erection of the chimney operated to make any more permanent or material change in the building than the cutting of the wall in the present case.

In some of the definitions of waste it seems to be essential that the injury to the property must be permanent, and it is insisted in the present case that the injury may be repaired and the wall placed in *statu quo* at a trifling expense, hence that it is not permanent. In this view of the matter hardly any alteration in a building can be said to be permanent which stops short of its entire destruction, and in none of the cases investigated by us where the act was declared actionable waste was the injury to the freehold irreparable. (Klie v. Von Broock, 37 Atl., 469; Denechaud v. Trisconi, 26 La. Ann., 402.)

"It is no justification of an act of waste that a party will, at some future time, put the premises in the same condition as they were when the lease was made. . . . The landlord has a right to a continuance of the state of things as they existed when the injury was done." (Agate v. Lowenbeim, 57 N. Y., 614; 2 Taylor, Landlord and Tenant, sec. 688.)

It is not necessary that the alteration should diminish the value of the property. It may even enhance its value. This does not affect its character as waste.

"The landlord has the right to exercise his own judgment and caprice whether there shall be a change." (Klie v. Von Broocke, *supra,* p. 473.)

In our opinion the cutting of the opening in question destroyed the identity of appellee's building as a room or building separated completely from the Scanlan building occupied by Foley. To all intents and purposes the two rooms became thereby as one. The right to relief by injunction, if in fact the act sought to be enjoined is unauthorized and constitutes waste, is not denied.

We are of opinion that the appellee is entitled to the relief granted, as fully set out in the order of the district judge, which is affirmed.

*Affirmed.*

Writ of error refused.