(85 South. 449)

## F. W. WOOLWORTH CO. et al. v. NELSON.

### (6 Div. 975.)

(Supreme Court of Alabama. April 8, 1920.)

**1. Landlord and tenant ⟶55(2)—Tenant who changes building guilty of waste.**

Common-law rule that a tenant is guilty of waste, if he materially changes the nature and character of the building leased, is still the law in Alabama.

**2. Landlord and tenant ⟶55(2)—Tenant guilty of waste in proposed alterations of store.**

Lessee and sublessee of building erected expressly for lessee for a store, with office space on second floor, *held* prospectively guilty of waste in making certain proposed alterations affecting structure substantially.

**3. Landlord and tenant ⟶55(2)—Law in respect to waste by alteration more favorable to tenant of freehold estate.**

The law in respect to waste by a tenant through alteration of leased building is more liberal to the tenant in respect of freehold estates than it is in respect of ordinary tenancies for years.

**4. Landlord and tenant ⟶55(2)—Building alterations held to amount to waste despite lease clause; "injure."**

Despite clause of lease of building for store providing lessee should have right to make alterations necessary for its purposes, if they would not injure building, proposed alterations for benefit of sublessee of second story, authorized by original lessee, *held* unauthorized, and to amount to legal waste, injuring the physical structure of the building and changing its structural adaptations; "injure" meaning materially impairing or destroying any part of the existing structure.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Injure.]

**5. Landlord and tenant ⟶55(4)—Injunction available to stay waste, regardless of its irreparability or solvency of the tenant.**

Injunction to stay waste is available remedy, regardless of question as to the irreparability of the damage or the solvency of the tenant about to commit waste.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by Frank Nelson, Jr., against the F. W. Woolworth Company and the Parisian Company, to enjoin alteration of a leased building. From decree granting injunction, respondents appeal. Affirmed.

---

The bill was filed by Frank Nelson, Jr., as owner and lessor of the storehouse in Birmingham, Ala., against the F. W. Woolworth Company, as lessee, and the Parisian Company, as sublessee of the second floor, for the purpose of enjoining them from altering and changing the external walls and the interior partition of the second floor. Building in question was erected by Nelson in the year 1913–14 in accordance with a written contract of lease previously made by him with the Woolworth Company. The lease was for 10 years from April 1, 1914, subject to termination by lessee after 5 years, and also renewable at its option for another 10 years, and was for its use for the purpose as a 5 and 10 cent store, and for other business purposes. The lease contract stipulated the general character and structure of the building, including a requirement that the second floor shall be divided into as many rooms as the lessee may request, and that the partition walls and ceiling of the second floor shall be plastered. It appeared from the affidavits and exhibits that this floor was in fact divided into 19 rooms, which were intended for and have been devoted to office use, and some of which are still so occupied by subtenant. The lease contains the express provision that the lessee shall have the right to make such alterations and changes in such parts of the building as it finds necessary for its purpose, at its own expense, provided that such alterations will not injure the building.

The bill shows that shortly theretofore (the bill being filed in August, 1919) the Woolworth Company subleased the second floor of the building to the Parisian Company and that the latter company with the approval or consent of the Woolworth Company is about to cut a door through the 27-inch brick party wall on the west side, so as to connect the second floor of complainant's building with the second floor of the adjoining building, already occupied by the sublessee, and make it available for use as an annex thereto, to convert a window of complainant's building, opening into a narrow court between the two buildings, into a door, and to destroy, cut out, and remove the partition, or practically all of the partition, between the rooms on the second floor of complainant's building, which are handsome and costly, and which were constructed at the request of the Woolworth Company. The bill charges that these alterations and changes would permanently injure the building, would cause irreparable injury to complainant, and would tend to destroy the identity and integrity of the building. It further charges that the cutting of the door and converting the window into a door would largely increase the risk of loss of the building by fire, increase the insurance rates, and cancel and avoid complainant's existing insurance policies to the amount of $40,000.

The prayer of the bill is for a writ of injunction, restraining respondents from making said changes and alterations, and requiring them to restore the steel window frames and glass already removed from the north wall preparatory to changing the window into a doorway.

The answer of respondents admits that the Parisian Company intends to do the thing complained of, but claims the right to do so under the authority granted in the lease, and asserts that those changes will not materially injure the building, nor increase the fire risk and insurance rates, but will, on the contrary, make the building more valuable for rental property. They offer to restore the building to its original condition upon the termination of their lease and to give bond therefor, with sureties to be approved by the court. It appears from affidavits offered by complainant that the restoration would cost from $7,500 to $10,000. Several architects and builders make affidavits that the proposed changes will not materially injure the building, and it appears from affidavits of insurance men that the rate would be increased $1 per $100. The court granted the temporary injunction.

Tillman, Bradley & Morrow and Frank Cahalan, all of Birmingham, for appellants.

It appears that the injuries could be measured in dollars and cents, and that respondents are wholly solvent. 189 Ala. 18, 66 South. 720; 127 Ala. 471, 29 South. 173, 85 Am. St. Rep. 137; High on Injunctions, § 697; 67 Md. 44, 8 Atl. 901, 1 Am. St. Rep. 374; 7 Johns. Ch. (N. Y.) 315, 11 Am. Dec. 500; 158 Ala. 243, 48 South. 581, 21 L. R. A. (N. S.) 755, 17 Ann. Cas. 392; 75 Ala. 429; 22 How. 249, 16 L. Ed. 280. The court was therefore without jurisdiction to order the writ.

Cabaniss & Cabaniss, of Birmingham, for appellee.

The court had jurisdiction to prevent waste as between the owner and reversioner and the tenant for a term. 40 Cyc. 497; 1 Bland (Md.) 569, 18 Am. Dec. 350; 25 Nev. 203, 58 Pac. 849, 46 L. R. A. 459; 128 Ga. 447, 57 S. E. 484, 10 L. R. A. (N. S.) 452, 11 Ann. Cas. 75. Taylor, Landlord and Tenant, 93 et seq.; 176 Ala. 585, 58 South. 916; 181 Ala. 279, 61 South. 276; 95 Ala. 235, 10 South. 652; 5 Pom. § 495. The changes proposed constituted a waste authorizing the injunction. 57 N. Y. 605; 67 N. J. Eq. 191, 58 Atl. 379; 56 N. J. Eq. 18, 37 Atl. 469; 66 Wis. 142, 28 N. W. 334, and authorities supra.

SOMERVILLE, J. [1] "It is an old principle of the common law that a tenant is guilty of waste if he materially changes the nature and character of the building leased.

* * * And many authorities, both English and American, declare that such changes will be deemed waste, even though the value of the property would be enhanced by the alteration." Parkman's Adm'r v. Aicardi, 34 Ala. 393, 73 Am. Dec. 457. This rule of the common law has been relaxed or partially repudiated by a number of courts in more modern times. 16 R. C. L. 733, § 225; Ann. Cas. 1912C, 393. But it is still the law in this state, and we think it is well founded upon the just and controlling consideration that the owner of the property is entitled to have it remain as it is, without material change in its structure, form, and character, except in so far as he has consented thereto, either by express agreement, or by necessary implication from the terms and purpose of the lease. Agate v. Lowenbein, 57 N. Y. 604, 614; Melms v. Pabst Brew. Co., 104 Wis. 7, 79 N. W. 738, 46 L. R. A. 478.

"The lessees have, by implication, the right to possess and enjoy the property during the term specified, and to put it to such use and employment as they please, not materially different from that in which it is usually employed, to which it is adapted, and for which it was constructed." Nave v. Berry, 22 Ala. 382.

[2] Pretermitting for the moment the question of express authority, we think it is too clear for serious controversy that, upon common-law principles and implications, the original lessee—and, a fortiori, the sublessee—would be guilty of waste in making the changes here proposed. They affect substantially the structure, the interior form, and the adaptation for use of the second floor of the building. The door cut through the party wall practically merges complainant's property with another adjoining building, and annexes its use thereto, in a way that is most unusual, and which certainly could not have been contemplated by the parties to the lease. It is conceded that this opening increases the danger of destruction by fire, and increases the insurance rates—results which necessarily, to some extent, impair the value of the building. The removal of the partitions between the rooms destroys the substance of the building, and changes the structure, use, and adaptation of the floor from office rooms to a single large room for a wholly different use. Abel v. Wuesten, 143 Ky. 513, 136 S. W. 867, Ann. Cas. 1912C, 389. So, also, though its injurious effects are not immediately apparent, the change from a window opening to a doorway, by cutting and other alterations, is in contemplation of law an injury to the substance of the building, which amounts to unlawful waste. Peer v. Wadsworth, 67 N. J. Eq. 191, 58 Atl. 379; Hamburger v. Settegast (Tex. Civ. App.) 131 S. W. 639; Klie v. Van Broock, 56 N. J. Eq. 18, 37 Atl. 469; Brock v. Dole, 66 Wis. 142, 28 N. W. 334; Melms v. Pabst Brew. Co., 104 Wis. 7, 79 N. W. 738, 46 L. R. A. 478.

[3] These principles of the law of waste are applicable to the ordinary cases of tenancies for years, and not with strictness to freehold estates, as to which the law is much more liberal in favor of the tenant. In the light of the foregoing principles we now consider the meaning and effect of the provision of the lease that—

"The lessee shall have the right to make such alterations and changes in such parts of the building as it finds necessary for its purposes. * * * providing that such alterations will not injure the building."

We observe, at the outset, that this authority to change and alter is granted to the lessee, and is limited (1) by the necessities of its contemplated use, and (2) by the inhibition against injury to the building. It seems clear that this authority was not intended for the independent benefit of sublessees, and cannot be extended to include the changes prompted by their necessities, much less by considerations of convenience merely. It evidently related to the business of the Woolworth Company, and contemplated such interior changes as actual use and experience might show the necessity of.

[4] But conceding, for the argument, that these proposed changes are sanctioned and directed by the Woolworth Company under the grant of authority to it, or that its sublessee, the Parisian Company, may by privity claim for itself the authority granted to the original lessee, we are convinced that such changes are not authorized, and amount to legal waste. Certainly they injure the physical structure of the building, by destroying its substance and profoundly changing its structural adaptations.

The second floor was constructed under the direction of the lessee for subleasing for office purposes, and it was subdivided into 19 rooms, at a cost of $7,500, in order to be so available. Nothing being said to the contrary in the lease:

"The law implies an obligation on the part of a lessee of a house not to put it to a use materially different from that for which it was constructed, and to which it is adapted, and has been usually appropriated." Parkman's Adm'r v. Aicardi, 34 Ala. 393, 396 (73 Am. Dec. 457).

These changes are designed, not to effect the clearly indicated purpose of both landlord and tenant when the lease was made and the building erected, but, on the contrary, to defeat that purpose by substantially changing the structure of the floor and fitting it for uses wholly different and certainly uncontemplated by either party. If sublessees can be regarded as standing in the place of the lessee in chief with respect to such an authority granted to the latter, we think they would be restricted to the making of such changes, of the usual and minor character, as would be necessary to adapt

the rooms, as established, to convenient and ordinary use as rooms. Certainly they are not authorized to adapt the floor for use as an annex to another building, for the necessity of the lessee must be limited to the use of the leased building per se, and cannot be extended to its use in connection with or relation to adjacent buildings.

In forbidding changes which would "injure the building," we think the word "injure" is used in its ordinary popular sense of materially impairing or destroying any part of its existing structure. The mere opinion of architects and builders that such changes as those proposed would not injure the building cannot overturn the conclusions of the law, and cannot bind the court, in the face of the admitted facts. Doubtless they do not injure it from the standpoint of structural safety, and of the feasibility of restoration; but that is not the standpoint of the owner, and it is not the standpoint of the law of property rights. In Agate v. Lowenbein, 57 N. Y. 604, which was much like the instant case, the lease authorized the lessee to make such inside alterations to the building "as he may think proper, provided that the same do not injure the premises." The court said:

"It must be held that the clause in the lease in question confers upon the lessee more power to make alterations than he would have had if it had not been inserted; it may be supposed to allow acts which, in point of law and technically, are waste, and yet are not accompanied by actual injury to the premises. It plainly gives only a qualified right to make alterations. The lessee's will is limited by the fact that the alterations are to cause no injury to the premises."

And it was further observed:

"It is, in general, no justification for an act of waste that a party will, at some future time, put the premises in the same condition as they were when the lease was made. The question is whether the tenant, at the time the wrongful act was done, caused an injury which then affected the plaintiff as to his reversion. How can it be known, as a matter of law, that a tenant will retrace his steps and repair an injury which he has deliberately caused? The landlord has a right to a continuance of the state of things as they existed when the injury was done. The tenant has no right to exercise an act of ownership."

As to the remedy:

"The preventive jurisdiction of a court of equity, through the aid of an injunction, is freely exercised to protect the reversion against waste by the tenant in possession, whether the waste may consist in an actual abuse of, or injury to the premises, or in their misuse, or in their conversion to uses prohibited by, or repugnant to the terms of the lease. The court will also intervene for the protection of the lessor, or of the lessee, in a proper case, against a violation of the express or implied covenants of the lease, thus in effect enforcing specific performance of the contract." McDaniel v. Callan, 75 Ala. 327; Parkman's Adm'r v. Aicardi, 34 Ala. 393, 73 Am. Dec. 457.

[5] These cases establish the rule in this state, though there are cases to the contrary in some other jurisdictions, that injunctions to stay waste, as between landlord and tenant, are available, regardless of the question as to the irreparability of the damage or the solvency of the defendant. Those considerations, which restrict the use of injunctions in ordinary cases of trespass—as in the cases cited and relied upon by counsel for appellant—have no application here. The distinction is clearly drawn in the able and interesting opinion of Fish, C. J., in the case of Brigham v. Overstreet, 128 Ga. 447, 57 S. E. 484, 10 L. R. A. (N. S.) 1152, 11 Ann. Cas. 75, where the subject is fully discussed, and the authorities cited. See, also, 40 Cyc. 524, C.

As declared by the New York court in Agate v. Lowenbein, supra:

"There has been no case in which the landlord was required to wait until the end of the lease to see whether the premises might be restored by the tenant to their original condition. If the waste committed went beyond the license an immediate wrong was done, which was at once the subject of redress in a court either of law or of equity." 57 N. Y. 612.

We think that the writ of injunction was properly issued in this case, and the order of the circuit judge in that behalf will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes