GEORGE F. TURMAN, as Administrator of the Estate of G. F. Turman, Deceased, and Corinne M. Turman, Plaintiffs and Appellants, v. SAFEWAY STORES, Inc., a Maryland Corporation, et al., Defendants and Respondents.

No. 9428.

Submitted September 16, 1957. Decided November 4, 1957.

317 Pac. (2d) 302.

Messrs. Smith, Boone & Rimel, Missoula, for appellants.

Mr. Ralph J. Anderson and Mr. Stanley P. Sorenson, Helena, Mr. George P. Sarsfield, Butte, for respondents.

Mr. Jack W. Rimel, Mr. Anderson and Mr. Sarsfield argued orally.

The HON. GEORGE J. ALLEN, District Judge (sitting in place of Mr. Justice Castles.)

Appellants, G. F. Turman and Corinne M. Turman, commenced this action in the district court for a declaratory judgment to declare the use of certain premises by respondents, Safeway Stores, Incorporated, a Maryland corporation, and Roosevelt-Osborne Motor Company, a Montana corporation, for garage purposes to be contrary to the terms of a certain written lease entered into between appellants and Safeway Stores, Incorporated, a Nevada corporation, the predecessor of Safeway Stores, Incorporated, a Maryland corporation, one of the respondents,

and by it sublet to Roosevelt-Osborne Motor Company, the other respondent; and praying that respondents be enjoined from so using said premises. Respondents, in turn, by separate cross-complaints, seek judgment adjudicating the sublease for garage purposes to be good and valid.

This appeal is from the judgment of the district court dismissing the complaint of appellants and decreeing the sublease to be good and valid.

Following the taking of the appeal this court was notified in writing that G. F. Turman, one of the appellants, was deceased and that his son, George F. Turman, had been appointed administrator of his estate. In accordance with Rule XVII of this court an appropriate order of substitution was made and entered herein.

On November 11, 1940, appellants leased the premises to Safeway Stores, Incorporated, a Nevada corporation by written lease for a period of thirty-three years from September 1, 1941. Safeway Stores, Incorporated, entered into the occupancy of the premises and conducted a retail food store therein for a period of about eleven years. On March 11, 1953, Safeway Stores, Incorporated, subleased the premises to Roosevelt-Osborne Motor Company for a period of twelve years from April 1, 1953. Roosevelt-Osborne Motor Company entered into the occupancy of the premises and conducted a motor sales and garage business therein.

Appellants complain that the change of the use of the building on the premises from its use by Safeway Stores, Incorporated, as a retail food store to its use under the sublease by Roosevelt-Osborne Motor Company, as a motor sales and garage business, places a greater burden on the building than contemplated by the lease originally made between the appellants and Safeway Stores, Incorporated.

Appellants' brief contains fifteen specifications of error. Counsel, however, have confined themselves in their argument to three main propositions which embody all of their specifications of error as follows: (1) That the cutting of a 14-foot door

in the front of the building was waste and a violation of the lease; (2) That apart from the structural change, the lessee violated an implied covenant of the lease not to use the building for a purpose materially different from that for which it was let; and (3) That injunction is the proper remedy.

The propositions so urged by appellants will be taken up in sequence.

*Proposition One.* The evidence discloses that the Roosevelt-Osborne Motor Company, in accordance with the right given in their sublease, altered the front of the building to make it suitable for the purpose of operating their motor sales and garage business by cutting a 14-foot opening and installing an overhead door operated by a motor hung from the ceiling.

Paragraph VI of the lease states:

''Lessee may make such repairs, alterations and improvements in demised premises as it may deem desirable for its use of the same. In case alterations are made without the consent of lessor and are such as materially change the front or partitions of said building, lessee agrees to restore such front or partitions to its original condition at the expiration of this lease, or any renewal thereof; provided, lessor, at least thirty (30) days before the expiration of said term gives lessee notice in writing requiring such restoration.''

In support of appellants' contention that such a material alteration constituted waste, they quote the general rule as stated in 32 Am. Jur., Landlord and Tenant, section 206, page 194, as follows:

''The doctrine is well established that in the absence of a statutory provision to the contrary, a lessee has no legal right, without the consent of the lessor, to make material changes or alterations in buildings on the leased premises to suit his own taste, convenience, or need, and that any material alteration or change in the nature and character of a building on the leased premises, even though it enhances the value of the property and is beneficial to the reversion, constitutes waste.''

There is no doubt as to the correctness of this rule or that the

cutting of a 14-foot opening in the building is a material alteration, but the rule is not here applicable because the alteration was made with the consent of the lessor, as permitted in paragraph VI of the lease quoted above.

Thus, the rule to be applied here is stated in 32 Am. Jur., Landlord and Tenant, section 208, pages 196, 197, as follows: "Of course, when the alteration made is authorized by the agreement of the parties, it will not be waste."

Appellants argue, however, that the alterations authorized by ██ paragraph VI, quoted above, could be only for food store purposes. They contend that the words "its use" are ambiguous, and to explain their meaning the court should have admitted the oral evidence as disclosed by their offer of proof No. 2, as follows:

"The plaintiff now offers to prove by the witness, G. F. Turman, on the stand, that at the time the lease was entered into the assignment provision was discussed; that when inquiry was made of the agents of Safeway who were then negotiating with him for this lease as to the purpose of the assignment clause. He was advised by them as follows: That Safeway corporation operated through different corporate forms and organizations, and that in the conduct of their business it might be necessary for them to assign this lease between one corporation and another, all as a part of the Safeway organization; that the provision relative to the subletting was in connection with their operations in the food business, they very often found it necessary or desirable to sub-let the meat counter, and that the provision of sub-letting was to be incorporated in the lease for that purpose."

In interpreting the language used, we are to give each word ██ or phrase its ordinary meaning and a court is not at liberty to read into a lease a meaning which the parties did not express in the language used. The words "its use" are plain and unambiguous. "Its" refers to Safeway Stores, Incorporated, and by virtue of the assignment clause in the lease also to its assignees

or sublessees. The assignment clause is stated in paragraph IX of the lease as follows:

"Lessee shall have the right to assign or transfer this lease, or to underlease or sublet the whole or any part of said leased premises. Should lessee assign this lease it shall nevertheless remain liable as a surety to lessor for full payment of the rent according to the terms of this lease."

"Its use" simply means such use as Safeway Stores, Incorporated, its assignees or sublessees, might have for the premises.

The following words of the court in Davidson v. Goldstein, 58 Cal. App. (2d) Supp. 909, 136 Pac. (2d) 665, 666, apply aptly to appellants' offer of proof No. 2:

"The fact that before the written lease was entered into the parties discussed defendant's use of the building, and defendant said he wanted to lease it to engage in the tire business and would engage in that and the battery business, does not limit his use to those purposes. The conversation does not purport to have that effect, and even if it did, it could not be given such effect against the written lease containing no such limitation."

The annotation appearing at 151 A.L.R. 311, reads as follows:

"The limitations on the use to which leased premises may be put is a matter of such vital importance to the parties concerned that ordinarily it may be assumed that if any agreement was made in respect thereto, the terms thereof would have been inserted in the written lease. This being so, the parol evidence rule will properly exclude testimony in respect to any previous or contemporaneous negotiation or oral agreement. Davidson v. Goldstein (1943) 58 Cal. App. Supp. (2d) 909, 136 Pac. (2d) 665; General American L. Ins. Co. v. North American Mfg. Co. (1943) 320 Ill. App. 488, 51 N.E. (2d) 619; 61-69 Pierrepont Street, Inc. v. Feist (1940) 124 N.J.L. 412, 11 A. (2d) 727; Hunts Point Restaurant v. Oval Foods (1934) 153 Misc. 451, 274 N.Y.S. 450; Sakellaris v. Wyche (1933) 205 N.C. 173, 170 S.E. 638; Weatherly v. American Agri. Chemical Co. (1933) 16 Tenn. App. 613, 65 S.W. (2d) 592."

Likewise in this case, if the appellants wished to limit to a

█ particular purpose the alterations they authorized by the terms of the lease, they could and should have included such words of limitation in the lease. Not having done so, they cannot vary the terms used in the lease by the admission of parol evidence. From the terms of the lease, it appears to us it would be mere speculation to say that the parties implied a limitation on the use to which the building might be put at some future date, from the mere fact that the building was to be used in the beginning as a food store. Certainly, by the express provisions of the lease itself as shown by paragraphs VI and IX, quoted earlier in this opinion, it was contemplated that alterations might be required, and further, that the premises might be sublet and occupied by different parties. It is the universal rule that when possible all the words and all the phrases of a written instrument are to be given effect and the written instrument construed as a whole.

*Proposition Two.* The argument underlying appellants' second proposition is that the property was let for use as a retail store only, and the sublease authorizing its use for garage purposes placed a greater burden on the premises and so was such a material change in its use as to violate the terms of the lease.

The right of the lessor to restrict the use of leased property to a specific purpose if clearly expressed in the lease is not disputed, but the lease we have to construe contains no express restrictions or prohibitions of any kind concerning the use of the premises.

The rule is that lessee is entitled to use the premises for any █ lawful or valid purpose, without interference on the part of the landlord, so long as such use is not forbidden by express provision of the lease or by some necessarily implied construction thereof, and does not amount to waste or destruction of the property.

Appellants urge that the terms of the lease itself raise an implied covenant not to use the premises for other than food stores uses. They call attention to paragraphs III and XII of the lease wherein it is provided that the building to be placed on

the premises shall be constructed "so as to comply with all laws and governmental regulations applicable to a building used for sale of foods"; and to paragraph VI wherein it is provided that "lessor agrees not to permit any other portion of said building or any other premises owned or controlled by lessor and situate within 50 feet of said premises to be used for or occupied by any business dealing in or which shall keep in stock or sell any staple or fancy groceries, or meats, or fruits, or vegetables, or bakery goods."

"As in other cases, implied covenants on the part of a lessor or a lessee may arise when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties to the contract made, but the covenants can be justified only upon the ground of legal necessity arising from the terms of a contract or the substance thereof." 32 Am. Jur., Landlord and Tenant, section 143, page 145. "However, implied covenants are not favored in the law." 14 Am. Jur., Covenants, Conditions and Restrictions, section 14, page 490.

It may here be said that the lease itself and the evidence show ▆ without question and the trial court found that it was contemplated by the parties at the time the lease was entered into that the building would be used for a retail food store. However, the question is: Does this fact raise an implied agreement not to use it for any other purpose? We believe it does not; and in our interpretation, we are fully supported by the annotation in 2 A.L.R. (2d) 1150, wherein it is said:

"Moreover, according to the weight of authority, words used in a lease which are merely descriptive of the character of the premises, although indicating a particular use, are not to be construed as restrictions upon the lessee confining his right to use the premises to the particular use which such words may suggest. See annotation in 148 A.L.R. 585, where it is further pointed out that provisions which authorize the use of the premises for a specific purpose or which merely give consent to a particular use of the property, are generally regarded as permissive

rather than restrictive in nature, and do not therefore, in the absence of other limiting language, restrict the lessee to the use specified in the lease.

"It has been said that a mere statement in the lease that the leased property may be used for a specified purpose is insufficient to raise an implied agreement not to use it for any other purpose. Chamberlain v. Brown (1909) 141 Iowa 540, 120 N.W. 334. * * *

"Although not strictly in point with the subject of the present annotation, attention may be called to Hannan v. Harper (1926) 189 Wis. 588, 208 N.W. 255, 45 A.L.R. 1119, where it was held that no implied covenant in favor of a lessee of the first floor of a building will arise that the second floor of such building shall be used for residential purposes only, from the fact that the building was constructed for residential purposes and had been devoted to such purposes at all times prior to the execution of the lease. The court said that the proposition that existing conditions for the uses to which premises have been put can be invoked to supply an implied covenant for the use of the premises for essential purposes was not supported by the authorities cited."

The sole remaining question is whether or not the change in the use of the building by the Roosevelt-Osborne Motor Company from a retail food store to a motor sales and garage, as shown by the evidence, amounted to waste or destruction of the building. It is not necessary to detail the evidence in this connection except to state that it showed that the building was used for motor sales and garage purposes in the customary manner, including the usual activities of repair, painting, and storage of automobiles with the attendant presence of oil and grease on the floor, the storage of oil and gasoline, and the resulting fumes from exhaust and painting; and that such use increased the insurance rates on the building. The evidence was conflicting as to the effect of such uses on the building. However, the trial court found that such use of the building by the Roosevelt-Osborne Motor Company does not constitute waste or destruction

of the building and is not an unreasonable and improper use thereof, injurious to the reversionary interests. We cannot say that the evidence fails to sustain the judgment.

In view of what we have heretofore said, it is not necessary to determine appellants' third proposition that injunctive relief is a proper remedy.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON, concurs.

The HON. PHILIP C. DUNCAN, District Judge, sitting in place of Mr. Justice Angstman, disqualified, concurs.

MR. JUSTICE BOTTOMLY:

I dissent.

In my opinion the evidence clearly shows that it was the intention of the plaintiffs and defendants at the time the lease was executed that the building in question would be used for a retail food store. Any alterations authorized by the lease could be made only for such store purposes. The words "its use" are plain and unambiguous, and refer to Safeway Stores, Incorporated, only, and any sublease allowable under the intention of the parties and the terms of the contract would of necessity be for food store purposes and for Safeway inter-corporate purposes.

The intention of the parties and the words used in a lease are to be given effect. From reading the majority opinion, the conclusion may be reached that one owning such property may not restrict its use under a lease to a specific purpose. This is a dangerous precedent with which I cannot agree.

It is not my understanding that, under the facts of this case, the owner of the property may be compelled in protecting his property by insurance, to pay a much higher fire insurance premium and have his property wasted by a different and more destructive use, by a sublessee, where as here the property was originally leased for food store purposes. See R.C.M. 1947, section 42-106, which provides in part: "When a thing is let

for a particular purpose, the hirer must not use it for any other purpose * * *.''

I agree with the equitable principles announced by the Alabama Supreme Court in Woolworth Co. v. Nelson, 204 Ala. 172, 85 So. 449, 451, 13 A.L.R. 820, wherein that court in considering and interpreting a similar lease clause which was as follows: ''The lessee [F. W. Woolworth Co.] shall have the right to make such alterations and changes in such parts of the building as it finds necessary for *its purposes,* * * * providing that such alterations will not injure the building'' said:

''We observe, at the outset, that this authority to change and alter is granted to the *lessee* and is limited (1) by the necessities of *its contemplated use,* and (2) by the inhibition against injury to the building. It seems clear that this authority *was not intended for the independent benefit of sublessees,* and cannot be extended to include the changes prompted by their *necessities,* much less by considerations of convenience merely. *It evidently related to the business of the Woolworth Company,* and contemplated such interior changes as actual use°and experience might show the necessity of.

''But conceding, for the argument, that these proposed changes are sanctioned and directed by the Woolworth Company under the grant of authority to it, or that its sublessee, the Parisian Company may by privity claim for itself the authority granted to the original lessee, we are convinced that such changes are not authorized, and *amount to legal waste.* Certainly they *injure the physical structure of the building,* by destroying its substance and profoundly changing its structural adaptations.'' Emphasis supplied. Citing many cases.

Here the original lease between plaintiffs and defendants contained the following provision: ''Lessee may make such repairs, alterations and improvements in demised premises as it may deem desirable for *its use* of the same.'' Certainly such alterations could only be made for food store purposes, and then only for intercorporate purposes. This clause does not, by its terms, extend to any other sublessee. Here the change in use results in

added burdens. This building was erected, specified and structurally built solely for food store purposes, and has been so used for some thirteen years. It is only common sense and common knowledge that such a building will deteriorate much faster under the stress, vibrations and use as a garage than when used for the purpose for which it was designed and built, thereby creating legal waste of the estate. The rule announced in the majority opinion has no application in this case where our statute, section 42-106, prescribes a different rule. Where the terms of the lease do not disclose the true intent of the parties at the time of execution, or where the terms are silent on some particular or cannot be readily understood, such intent of the parties may be shown by parol evidence where as here the offered proof was not to vary nor to contradict the terms of the written agreement, but only to explain the intent of the parties in the use of certain words. Equity grants relief to a lessor to restrain a lessee that is limited to a particular use of the demised premises from using the property for a use that will waste the estate, or from the use thereof for a completely different purpose than was anticipated. Compare Boh v. Pan American Petroleum Corp., 5 Cir., 128 F. (2d) 864; Surface v. Brock, 142 Kan. 805, 51 Pac. (2d) 1005; Godfrey v. Black, 39 Kan. 193, 17 Pac. 849.

I know of no rule of law that requires that each of the parties to a lawsuit must, as a witness, testify that the contract as written does not express, or is not clear as to the intentions of the parties. Compare Parchen v. Chessman, 53 Mont. 430, 436, 164 Pac. 531; Whorley v. Koss, 122 Mont. 446, 206 Pac. (2d) 809.

In my opinion the district court committed reversible error in denying plaintiffs' offers of proof No. 1 and No. 2, which offered evidence was not to vary the terms of the written contract, nor to contradict its terms, but to explain the intent of the parties in the use of the words thereof, and the court erred in refusing to find under the evidence as a matter of fact, that the use of the building as a garage places an uncontemplated burden on

the building and the owners thereof, which constitutes a legal waste of the estate.

I would reverse the judgment and order a new trial.

MR. JUSTICE ADAIR:

I concur in the dissenting opinion of Mr. Justice Bottomly.