(91 South. 74)

### BURTON v. STEVERSON.   (7 Div. 183.)

(Supreme Court of Alabama.   Oct. 20, 1921.)

**1. Appeal and error  ⟨key⟩1040(16)—Overruling of demurrer held not prejudicial.**

Defendant cannot complain of overruling of demurrer to bill in that it asked reformation of a contract, where the court in its opinion stated, "Complainant does not insist on a reformation of the contract, and therefore it will not be further considered."

**2. Landlord and tenant  ⟨key⟩5(1)—Writing held a lease or grant of right to extract turpentine from standing timber.**

An instrument, whereby one party "conveyed, demised, sold and leased, and by these presents does grant, bargain, convey, demise, sell and lease to the second party, * * * all growing pine trees for turpentine purposes now upon the following described lands," etc., held a lease, in a sense a grant, of the particular substance produced by standing timber, which invested the party of the second part with the right to extract turpentine.

**3. Landlord and tenant  ⟨key⟩93—Instrument silent as to time for removing turpentine means reasonable time.**

Where a writing granting the right to remove turpentine from trees is silent in respect of the period of enjoyment of the right, the law presumes the parties intended it should exist for such reasonable time as would allow the lessee to avail of the right assured and to restore the lessor to his original status of right to and possession of the trees.

**4. Trial  ⟨key⟩136(1)—Reasonable time for removal of turpentine question of law on undisputed facts.**

When the facts bearing on the matter are full and undisputed, what is a reasonable time for removal of turpentine from pine trees is a question of law to be decided by the court.

**5. Contracts  ⟨key⟩163 — Written interpolated words accorded controlling effect.**

Written interpolated words which modify or contradict printed terms in a printed form are accorded a controlling effect in the construction of the whole instrument, but the courts will endeavor to reconcile discrepancies if that can be reasonably done, to the end that every clause may have appropriate effect.

**6. Landlord and tenant  ⟨key⟩93—Clause setting limits as to use of trees for turpentine purposes construed.**

Under an instrument giving the right to take turpentine from trees on certain lands for 4 years, "beginning cutting in the fall of 1911," held that grantee or lessee was not limited in his right to the four years beginning in the fall of 1911, in that he had a right to begin only on a portion of the land in that fall, and could begin on remaining portions of the land within a reasonable time, being entitled to extract turpentine from each portion for 4 years after beginning upon it.

**7. Contracts  ⟨key⟩154—Presumed that parties intended to make rational contract.**

It is always presumed that parties intend to make a reasonable, rational contract, and only the terms they employ can invite or justify a conclusion to the contrary.

**8. Landlord and tenant  ⟨key⟩55(4)—Irreparable damage and insolvency not necessary factors essential in suit to enjoin waste.**

Neither irreparable damage nor the insolvency of the lessee, or sublessee, in possession are factors essential to the equity of a bill by a landlord, or lessor, to prevent waste.

**9. Landlord and tenant  ⟨key⟩134(2)—Grantee of right to extract turpentine must work timber according to generally accepted method.**

Where a lease, or grant, of right to extract turpentine from trees obligated the lessee to use "reasonable precaution" to protect the standing timber, but was silent as to the method to be pursued, the working of the timber must have been done according to the generally accepted method, and such timber loss as resulted from that character of action was not chargeable to the lessee; but he was liable to the lessor for any negligent, destructive methods abusive of the right.

Appeal from Circuit Court, Talladega County; A. P. Agee, Judge.

Bill by J. M. Steverson against George R. Burton for an injunction to restrain cutting, boxing, or otherwise interfering with standing timber, to reform contract and for other relief. From a decree overruling demurrers to the amended bill, defendant appeals. Affirmed.

The following is the contract referred to in the opinion:

"This indenture, made and entered into this the 28th day of January, 1911, between J. M. Steverson and S. I. Steverson, his wife, of the county of Tallapoosa, state of Alabama, the first party, and J. J. Howell and A. G. Hoover, of the county of Covington, state of Alabama, second party, witnesseth:

"That said party of the first part, for and in consideration of the sum of one dollar, in hand paid by the second party, the receipt whereof is hereby acknowledged, for and in considera-

tion of nineteen thousand and six hundred dollars, to be paid as follows, to wit: Five hundred cash, the receipt of the same being hereby acknowledged, and seven thousand one hundred dollars on or before the first day of December, 1911, and six thousand dollars per year until full amount is paid and interest at the rate of 7 per cent has granted, bargained, conveyed, demised, sold and leased, and by these presents does grant, bargain, convey, demise, sell and lease to the second party, their heirs, executors and assigns, all growing pine trees for turpentine purposes now upon the following described lands, to wit: [Here follows description of the lands.]

"The parties of the second * * * hereby agree to use all reasonable precaution to protect the above timber, and to take the trees every year during this contract. * * * Total 3,920 acres all in Talladega county, Alabama.

"Together with all necessary rights, privileges, uses and purposes appertaining to the turpentine business, including the construction of all roads, tram railroads, over or through said lands, that may be necessary, or convenient; the right of ways over said lands may be exercised at any and all times, continuously or not continuously, now or at any time hereafter, as long as the second party or assigns may require to reach any other land that he may hereafter lease in the neighborhood.

"It is further agreed that said second party may assign this lease in whole or in part, and that the assignee of this lease shall have the same right of assignment, and that all rights and privileges of the second party shall vest in whomsoever may succeed to the interest hereby conveyed in the said party by virtue of such assignment or otherwise;

"To have and to hold, box, work and otherwise use said timber for turpentine purposes unto the said second party, their heirs, successors and assigns; it being expressly covenanted and agreed that the second party may commence boxing, working and otherwise using for turpentine purposes said timber, or any portion thereof, at any time they may desire, or their business may require, and continue to work and to otherwise use the same or any portion thereof, for the full term of four years, beginning with reference to each portion thereof, from the winter that the boxing and working of each portion is commenced, and shall continue to operate until all the timber and each and every part thereof has been boxed, worked and otherwise used, for the full period of four years from the winter during, that the boxes are cut and until all the turpentine, scrape and dip has been gathered from the fourth years working.

"Beginning cutting in the fall 1911.

"And the said first party, their heirs, executors and administrators covenant that they have a good title to, and legal rights to convey the same; that the same is free from liens and incumbrances of all kinds; that all taxes on the same have been paid and will be paid by them during the continuance of this lease.

"Should the lessee or the sublessee, hereunder find that any taxes remaining unpaid after becoming due and payable, or that any lien exist upon any of the said timber rights and privileges for the time aforesaid then they may pay the same and deduct the amount paid from the next payment falling due the lessor hereunder.

"And the first party, their heirs, executors and administrators, the free and uninterrupted use and enjoyment of the said timber rights and privileges for the time aforesaid and for the purposes aforesaid unto the second party, their heirs, executors, administrators and assigns, against the said party' of the first part, their heirs, executors, and administrators, and all and every other person or persons whatever, shall and will warrant and defend by virtue of these presents.

"In witness whereof, the parties of the first part hereunto set their hands and seals the day and date first written above.

"J. M. Steverson. [L. S.]
"S. I. Steverson. [L. S.]
"A. G. Hoover. [L. S.]
"J. J. Howell. [L. S.]"

The above lease was assigned by Howell and Hoover, to George R. Burton.

Knox, Acker, Dixon & Sims, of Talladega, for appellant.

The bill was multifarious. 174 Ala. 438, 57 South. 20. The lease had not expired. 83 Ala. 290, 3 South. 674; 176 Ala. 314, 58 South. 311, Ann. Cas. 1915A, 561; section 3418, Code 1907; Gen. Acts 1919, p. 24. The allegations do not show that the injury complained of amounts to the destruction of the estate, nor that it could not be adequately compensated in damages. 32 Fla. 344, 14 South. 4, 22 L. R. A. 233, 37 Am. St. Rep. 101; 52 Fla. 486, 42 South. 730, 11 Ann. Cas. 452; 181 Ala. 208, 61 South. 886. The title passes temporarily to the appellant, and ejectment or action for unlawful detainer is the remedy to determine who is entitled to the timber. 111 Ala. 658, 20 South. 594; 134 Ala. 623, 33 South. 9, 92 Am. St. Rep. 45; 180 Ala. 148, 60 South. 825; 200 Ala. 114, 75 South. 881; 182 Ala. 303, 62 South. 519. Appellee has a plain and adequate remedy at law. 127 Ala. 78, 28 South. 698; 127 Ala. 471, 29 South. 173, 85 Am. St. Rep. 137; 141 Ala. 664, 37 South. 922; 182 Ala. 303, 62 South. 519; 189 Ala. 13, 66 South. 720; 198 Ala. 236, 73 South. 486, L. R. A. 1917C, 232; 200 Ala. 414, 76 South. 6. As to how the contract should be construed, see 198 Ala. 363, 73 South. 535; 201 Ala. 150, 77 South. 574; 6 R. C. L. 592 and 956.

Merrill & Allen, of Anniston, and S. J. Darby, of Alexander City, for appellee.

The law presumes performance was in a reasonable time to be determined by the facts and circumstances surrounding the parties and the property. 56 Ala. 566, 28 Am. Rep. 776; 154 Ala. 160, 45 South. 296; 191 Ala. 378, 68 South. 63; 201 Ala. 70, 77 South. 364; 201 Ala. 212, 77 South. 738; 13 C. J. 687; 25 Cyc. 1553. Where the injury or damage threatened is shown to be irreparable, equity will intervene. 201 Ala. 157, 77

South. 574. Also to prevent waste or destroying the timber. 96 Ala. 227, 10 South. 848; 147 Ala. 377, 41 South. 816. The reversion will also be. protected. 75 Ala. 327; (Fla.) 85 South, 349; 200 Ala. 568, 76· South. 926, L. R. A. 1918E, 155; 201 Ala. 157, 77 South. 574. As to the proper interpretation of the contract, see 201 Ala. 194, 77 South. 720; 84 Ala. 169, 4 South. 359, 5 Am. St. Rep. 354; 175 Ala. 521, 57 South. 709, Ann. Cas. 1914D, 125; 118 Miss. 502, 79 South. 67.

McCLELLAN, J. [1] The appellee filed this bill against appellant, the court below overruling defendant's demurrer to the amended bill and parts thereof. The appeal followed that action. The amended bill was the result of a substitution, for the original bill, filed September 9, 1920, its subsequent amendment eliminating paragraphs 4 and 5 of the substituted original bill. Another feature of the amended bill was eliminated by this fact, thus stated in the court's opinion:

"Complainant does not insist upon a reformation of the contract, and therefore it will not be further considered."

Referring this affirmation to the occasion of the hearing on demurrer to the amended bill, the practical effect was to render wholly unimportant any design to secure relief through reformation of the contract, reproduced, so far as presently material, in the statement of the case; and hence the appellant (defendant) has nothing of which to complain in that particular.

The theory and design of the amended bill, filed by the lessor against a sublessee, is to have the contract construed with respect to the time in which it permitted the extraction of turpentine and to prevent waste of the standing pine timber, so let for turpentine purposes and product, from which the substance should be extracted; the original parties, as well as the sublessee, being all along aware, it is averred, that the owner, the complainant, was a manufacturer of timber into lumber from pine stock, was engaged in the business, and held the standing pine timber so let for the ultimate purpose of converting it into merchantable lumber.

[2-4] Manifestly, the instrument in question is a lease, in a sense a grant, of the particular substance produced by standing timber. Milliken v. Faulk, 111 Ala. 638, 658, 20 South. 594; Mt. Vernon Lbr. Co. v. Sheppard, 180 Ala. 148, 155, 50 South. 825; Millikin v. Carmichael, 139 Ala. 226, 35 South. 706, 101 Am. St. Rep. 29; Brooks v. Cook, 141 Ala. 499, 505, 506, 38 South. 641. The case of Ferris v. Hoglan, 121 Ala. 240, 25 South. 834, involved a different character of subject-matter. Such leases are limited to 20 years. Code, § 3418. The intent of the instrument in question was to invest Howell and Hoover, or their assignee (Burton), with the right to extract turpentine from the standing pine timber on the large areas, separated into two or more tracts, described in the instrument. In this instrument the parties made no stipulation as to the period within which the extraction of the turpentine on the whole area should be accomplished or the right thereto should terminate, though it is quite clear that the right of the lessee, availed of seasonably, to work all the timber on the land was assured. The writing being silent in respect of the period of enjoyment of the right assured, the law presumes the parties intended it should exist for such reasonable time as would allow the lessee to avail of the right assured, and to restore the lessor to his original status of right to and possession of the trees. Pratt Con. Coal Co. v. Short, 191 Ala. 378, 390, 68 South. 63. When the facts bearing on the matter are full and undisputed, what is a reasonable time is a question of law, to be decided by the court. Continental Jewelry Co. v. Pugh, 168 Ala. 295, 302, 303, 53 South. 324, Ann. Cas. 1912A, 657; L. & N. R. Co. v. Hestle, 200 Ala. 137, 139, 75 South. 885, among others.

[5] A blank form was used by the parties in constituting this instrument. The words prescribing that the "cutting" should begin "in the fall of 1911" were inserted in handwriting. To the extent these words modify or contradict other terms printed in the form, the written, interpolated words are accorded a controlling effect in the construction of the whole instrument. Denson v. Caddell, 201 Ala. 194, 195, 77 South. 720. The applicability of this rule depends, as its statement imports, upon inconsistency between the printed terms and the interpolated written terms. It is not presumed that parties will insert inconsistent, irreconcilable provisions in their contracts; and the courts will endeavor to reconcile discrepancies, if that can be reasonably done, to the end that every clause may have appropriate effect. John Deere Plow Co. v. City Hdw. Co., 175 Ala. 512, 515, 516, 57 South. 821.

[6, 7] The only conflict between the interpolated expression and the printed terms (quoted in the statement ante) is with respect to the commencement of the work, the "cutting." The printed requirement was general, did not prescribe the time the beginning should be made, and did not require the cutting to be begun, in the fall of 1911, upon each separate tract or upon every productive tree on the whole area (over 3,000 acres) or every productive tree on separate tract. The prescription of a "term of four years" is referable as a limitation, to the lessee's or sublessee's right to extract turpentine from a "portion" of the subject of the lease, "beginning with reference to each portion thereof from the winter that the boxing and working of each portion is commenced."

This period (4 years) was designed to fix the time the lessee was allowed to appropriate the resin from that separate "portion" or tract on which "boxing," etc., had been done, the period (4 years) to begin—as far as that "portion" or tract was concerned—from the winter any part or number of the trees on such "portion" or separate tract were cut and prepared to produce turpentine, a seasonable "crop." In view of the terms of the entire instrument, the subject-matter of the contract, and the circumstances surrounding the parties, it is unreasonable to suppose that the parties entertained the purpose to invest the lessee or any sublessee with the unrestricted discretion, after "beginning in the fall of 1911" to prolong the right to take the turpentine, even for 20 years after 1911, by initiating the 4-year period prescribed with reference to the boxing or cutting, for turpentine purposes, of each tree on so great an aggregate area. Unless the construction indicated is adopted, the only alternative is the acceptance of that unreasonable interpretation. It is always presumed that parties intend to make a reasonable, rational contract. Only the terms they employ can invite or justify a conclusion to the contrary. Birmingham Water Works Co. v. Windham, 190 Ala. 634, 637, 638, 67 South. 424. In other words, to summarize the construction taken: The lessee must have begun "cutting" on some one of the "portions," meaning separate tracts, in the fall of 1911. Within a reasonable time after the fall of 1911 the lessee must have begun to work other tracts on which no cutting had been begun; and, having begun to cut on a separate "portion" or tract, the stipulated "four-year" period began to run, and upon its termination as respects a separate tract or "portion," the right of the lessee or sublessee to gather the product ceased and determined. Heflin v. Bingham, 56 Ala. 566, 28 Am. Rep. 776; Mt. Vernon Lbr. Co. v. Shepard, 180 Ala. 148, 155, 60 South. 825.

From these considerations it cannot be affirmed as upon the averments of the amended bill that the lessee's or sublessee's right to take turpentine from a particular separate "portion" or tract or tracts has terminated, that depending on when the cutting was begun on a separate tract or portion, the stipulated 4-year period commencing to run when "the cutting" of the separate tract or portion was made. The amended bill avers that the "cutting" was commenced, as the contract required, in the fall of 1911. The tract (at least one) on which this "cutting" was begun was subject to the stipulated 4-year limitation, and hence expired with the season of 1915. If the "cutting" was then (1911) begun on two or more separate tracts or portions (of the large area), the right to work such tracts or portions expired with the season of 1915. The averments of the bill are not sufficiently discriminative to permit a pronouncement with respect to the expiration of the right to take turpentine from separate, definitely described tracts.

[8, 9] The allegations of the bill, too elaborate to justify their reproduction, efficiently invoked the court's jurisdiction to prevent waste. So the court below decided. Woolworth v. Nelson, 204 Ala. 172, 85 South. 449, 452, 13 A. L. R. 820. Neither irreparable damage nor the insolvency of the lessee or sublessee in possession are factors essential to the equity of a bill, by the landlord or lessor, to prevent waste. Woolworth v. Nelson, supra. The lease obligated the lessee and any sublessee "to use all reasonable precaution to protect" the standing pine timber and also "to rake the trees every year" while the contract continued with the design to minimize, if not prevent, the hazard of forest fires in the timber worked for its turpentine. We do not find in the instrument a stipulation defining how the timber should be treated to extract the product. That was left to the control of the custom, method, and care with which such work is usually done in this part of the country. It was the duty of the lessee and any sublessee to meet the obligation of "reasonable precaution" set down in the instrument. The working of the timber must have been done according to the generally accepted method, and such timber loss as resulted from that character of action was not chargeable to the lessee or to the sublessee. Negligent, destructive methods were abusive of the right, and for damage to the timber, due to the wrong of the sublessee, legally attributable thereto, the lessor is entitled to be remunerated. Having acquired jurisdiction for the purpose of preventing future waste—including the hazard involved in the sublessee's alleged failure "to rake" the trees—the court should, as was held below, determine the questions involving the ascertainment of damages claimed.

The bill is not multifarious.

The action of the court in overruling the demurrer is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.