344 So.2d 743 (1977)
INDUSTRIAL MACHINERY, INC., a corp., and Alabama Outdoor Advertising Co., Inc.
v.
CREATIVE DISPLAYS, INC.
SC 1822.
Supreme Court of Alabama.
February 4, 1977.
Rehearing Denied April 8, 1977.
*744 William M. Acker, Birmingham, for Alabama Outdoor Advertising Co.
William J. Sullivan, Jr., Birmingham, for Industrial Machinery, Inc.
W. Frank Greenleaf and James A. Harris, Jr., of Sirote, Permutt, Friend, Friedman, Held & Apolinsky, Birmingham, for appellee.
*745 FAULKNER, Justice.
This is a contest between two lesseeseach claiming the other's lease to be void. The trial court declared the first lease void, and the second valid. We affirm.
On December 5, 1972, Alabama Outdoor Advertising Co., Inc. leased part of a lot from All State Linen Service Co. to erect a commercial advertising sign. The term of the lease was for ". . . Indefinite years, beginning . . . 1 day of January, 1973, and ending . . . year to year thereafter." The consideration was $1.00 plus Alabama Outdoor's painting an on-premises sign to advertise All State's business. The sign was painted, but no billboard was ever erected by Alabama Outdoor. The lease was not recorded. On March 24, 1975, the lot was purchased by Industrial Machinery, Inc., and in April, for $600 a year, payable in equal monthly installments, it leased part of the lot to Creative Displays, Inc. The term of the lease was to begin on the date a billboard was erected, and to run for a period of 5 years thereafter. The lease contained a condition that "Creative Displays will not be bound by this contract unless authority can be obtained to build 5 similar structures (unipoles) in the city of Birmingham on the Interstate." Creative applied to the State Highway Department in July for a building permit, but the Department refused to grant it. In August, Creative began paying the monthly rental payments. Upon its learning of the All State lease to Alabama Outdoor, Industrial Machinery filed a declaratory action to have the lease to Creative declared void, and the Alabama Outdoor lease declared valid. The court found the lease to Alabama Outdoor void, and the lease to Creative valid and binding on Industrial Machinery.

1.

All StateAlabama Outdoor Advertising Lease
A lease for a term of years must have a term certain. There must be a certain beginning and a certain ending. See National Bellas Hess, Inc. v. Kalis, 191 F.2d 739 (8th Cir. 1951), cert. denied, 342 U.S. 933, 72 S.Ct. 377, 96 L.Ed. 695; Ehrlich v. Barbatsis Holding Co., 63 So.2d 911 (Fla.1953). The lease to Alabama Outdoor began on January 1, 1973, for a term of "indefinite years," ending "year to year thereafter." Thus, there was no certain ending, thereby rendering the lease void for a term of years. However, a tenancy at will was created. Where the end of the term is indefinite and uncertain there is no valid lease for a term of years, but an estate at will is thereby created. 3 Thompson on Real Property § 1088 (1959); National Bellas Hess, Inc. The question, therefore, is for what period of time was the tenancy at will in existence. We are of the opinion that the resulting tenancy at will began on January 1, 1973, and ended when the property was conveyed to Industrial Machinery, Inc. on March 24, 1975. "[T]he rule generally followed in this country is that a tenancy at will is terminated by a conveyance of the premises by the landlord . . .." 49 Am.Jur.2d Landlord and Tenant § 79; accord, Annot., 120 A.L.R. 1006 (1939). We opine also that notice to Alabama Outdoor to terminate was not required. Ten days notice is required under Title 31, § 3 of the Code of Alabama 1940 only when the tenancy at will is expressly created. Martin v. Carroll, 259 Ala. 197, 66 So.2d 69 (1953).
Because the lease terminated when the property was conveyed, we do not decide the issue of priority of the lease.

II.

Industrial MachineryCreative Displays Lease
The first question raised as to the validity of the Industrial MachineryCreative lease is whether a lease which is not binding on one party until the happening of an event controlled in part by that party is mutually binding. Alabama Outdoor and Industrial Machinery contend that the contract provisions stating that Creative will not be bound unless authority can be obtained to build a billboard on Industrial Machinery's lot and to erect 5 unipoles on the Birmingham *746 Interstate give Creative a unilateral right to terminate the lease and that, hence, the lease is void for want of mutuality. Alabama Outdoor and Industrial Machinery further argue that, assuming that the lease is not found void for want of mutuality, the lease was terminated when Creative was unable to obtain authority to construct the billboards as expressly provided in the lease.
Real estate purchase and lease contracts commonly contain a clause stating that the conveyance is subject to securing a zoning change. Such a clause is a protective provision for the buyer or lessee which does not per se make a contract void for want of mutuality. To hold otherwise would place too much risk on the buyer or lessee so as to prevent the development of property. This lease is not void for want of mutuality because of the protective provisions.
The lease was not terminated because Creative was unable to obtain the authority to erect the unipoles. Creative made a good faith effort to obtain that authority. After being denied that authority but still within four months of the signing of the lease, Creative began making the monthly rental payments, thus waiving the protective provisions, and binding itself to the lease.
The case of LaGrave v. Jones, Ala., 336 So.2d 1330 (1976), is controlling as to the waiver question. In that case this court held that a purchaser of land has the right to waive a condition for his exclusive benefit in a contract for the sale of that land to him. Accord, Hodge v. Joy, 207 Ala. 198, 92 So. 171 (1921) (lease contract); Commercial Union Fire Ins. Co. v. Parvin, 279 Ala. 645, 189 So.2d 330 (1966); cf. Young v. U.S., 327 F.2d 933 (5th Cir. 1964).
The facts of LaGrave and the instant case are similar. In LaGrave the parties were concerned with a purchase option with the following conditions: (1) that it would expire on a certain date unless exercised prior to that date, (2) that it was subject to the buyers' being able to secure certain zoning changes, and (3) that the purchase price was to be a certain figure. The buyers, after their request for a variance was denied, notified the sellers that they exercised the option despite the denial, but the sellers refused to convey the property. This court found a valid waiver and required the conveyance.
In the case at bar, it was undisputed that the protective provisions were solely for the benefit of Creative. Although no specific date was mentioned, there was an implied condition of reasonable time within which Creative was to erect the billboard. Both contracts were subject to the obtaining of certain zoning changes, and both specified a certain conveyance price. That we are not here concerned with an option is insignificant because the waiver rule applies to all contracts, not just option contracts. See Ala. Tailoring Co. v. Judkins, 205 Ala. 601, 88 So. 865 (1921).
The payment of rent indicated to Industrial Machinery, Creative's intention to waive the protective provisions and bind itself to the lease despite the State Highway Department's refusal to issue the permits. It would not be fatal to the validity of the contract if Creative did not expressly inform Industrial Machinery of the waiver, since the waiver of contract provisions may be implied from acts and circumstances surrounding the performance of the contract. Stauffer Chemical Co. v. Brunson, 380 F.2d 174 (5th Cir. 1967). Moreover, Industrial Machinery, by its acceptance of the August and September rent checks, impliedly agreed to the waiver. Industrial Machinery cannot repeal its acceptance or rescind the contract by merely sending a check to Creative in the amount of the past rent payments. Rescission requires that the minds of all the parties "meet in an agreement or mutual release fully settling all rights under the contract." San-Ann Service Inc. v. Bedingfield, 293 Ala. 469, 473, 305 So.2d 374, 377 (1974).

III.
Alabama Outdoor and Industrial Machinery further contend that the second *747 lease is not binding because it is too indefinite and uncertain as to the commencement date. This argument is based on the fact that Creative has not promised to pay the rent until the date the board is erected, a date which is in Creative's discretion.
Once the rent payments were offered and accepted, commencement of the leasehold term was made definite. See Hackney v. Griffin, 244 Ala. 360, 13 So.2d 772 (1943). Payment removed any uncertainty of the commencement of the leasehold term since it was an indication of Creative's intention to be bound and to waive the provisions. See Hodge v. Joy.
"It is presumed that parties intend to make a reasonable, rational contract." Lowery v. May, 213 Ala. 66, 71, 104 So. 5, 9 (1925). For this lease to be a reasonable and rational contract, a condition of reasonable time as to the commencement date must be implied. See Allison v. Lee, Ala.App., 333 So.2d 149 (1976).
Alabama Outdoor and Industrial Machinery have failed to show that Creative violated the implied condition of reasonable time as defined by business custom. To the contrary, the evidence shows that Creative made a good faith effort to erect the billboard soon after the lease was signed and in fact commenced making rent payments a mere 3frac12; months after signing the lease. We have long recognized a presumption in favor of the validity of a contract, especially when attacked for uncertainty. McIntyre Lumber & Export Co. v. Jackson Lumber Co., 165 Ala. 268, 51 So. 767 (1910).
Although there are no Alabama cases on point, we find that the better rule is that a valid term for years may be created to begin in the future and that a lease may provide that the term may commence on the happening of a stated event. See, e.g., Wunsch v. Donnelly, 302 Mass. 286, 19 N.E.2d 70 (1939); DePauw University v. United Elec. Coal Co., 299 Ill.App. 339, 20 N.E.2d 146 (1939); Carolina Helicopter Corp. v. Cutter Realty Co., 263 N.C. 139, 139 S.E.2d 362 (1964).
Alabama Outdoor and Industrial Machinery also contend that the Creative lease violates the rule against perpetuities, as codified in T. 47, § 16 of the Code of Alabama, because the lease begins only upon the happening of an event. We reject this contention. The facts of this case do not invoke the operative effect of the rule.
The trial court correctly held the lease from Industrial Machinery to Creative Displays to be a valid lease, binding both parties to it.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, JONES, EMBRY and BEATTY, JJ., concur.
SHORES, J., concurs in the result.
MADDOX, J., concurs specially.
MADDOX, Justice (concurring specially).
I concur in Parts II and III of the opinion authored by Mr. Justice Faulkner. I concur in the result reached in Part I because of the following reasons.
The trial court found, with regard to the All StateAlabama Outdoor Advertising Lease as follows:
"The Court finds that both IMI and Alabama Outdoor have completely failed to prove that Allstate had any right, title or interest in the property in question. The only evidence before the court is that Allstate was the occupant of the premises. For aught that appears, Allstate could have been a mere licensee, or even a trespasser. Alabama Outdoor cannot acquire a greater right or interest in the property than its lessor. . . ."
Appellants attack this finding and conclusion, saying that Alabama Outdoor, as lessee, did not have to show that All State had authority to lease the subject property. I disagree. Plaintiff, IMI, alleged in its complaint, as follows:
"(3) Prior to April 15, 1975, IMI purchased the following described real property situated in Jefferson County, Alabama, to-wit:

*748 (DESCRIPTION)
On April 15, 1975, IMI did not know that its predecessor which occupied the said real property had executed a lease of the subject property to Alabama Outdoor permitting Alabama Outdoor to erect and to maintain a billboard on the subject property. . . .
* * * * * *
"(7) IMI takes the position and submits that the purported lease of April 15, 1975 to Creative is void and unenforceable for the following separate and several reasons:
"(a) It was precluded by a preexisting exclusive lease to Alabama Outdoor.. . ." [Emphasis added].
Alabama Outdoor admitted the execution of the lease and the allegations of paragraph 7. Consequently, IMI and Alabama Outdoor both took the same position that the Alabama Outdoor lease was valid and exclusive. Defendant, Creative, in its answer, denied the allegations of paragraph 7 of the complaint as set out. Creative admitted the allegations of paragraph 3 that IMI was the owner of the property but denied each and every other allegation of paragraph 3.
The evidence shows that IMI's predecessor in title was "Marcia L. Pear, an undivided one-half interest and Charles S. Pear, as Trustee for Steven J. Pear and David Mark Pear, under Trust Instrument dated May 23, 1966. . . .", not All State Linen. There was no showing, therefore, that All State Linen had any right, title or interest in the subject property at the time it executed the December 5, 1972, lease. A relationship between All State and the Pears may have existed. However, the parties did not request permission to obtain any additional evidence when the objection was raised by Creative during the trial. Creative's objection came during the testimony of witness Womack:
"Q And is this your signature on the document identified as Plaintiff's Exhibit 2?
"A Yes, sir, it is.
"Q `Alabama Outdoor Advertising Co., Inc. By,' and that `Sam Womack,' and that is you, right?
"A Yes.
"Q Now, on or about December 5, 1972, or prior to that, did you negotiate with representatives of an outfit called All State Linen Service Company, which led to the execution of this document?
"MR. HARRIS: Judge, I object to that on this ground:
"No one has shown the relationship of All State Linen to this property in question as a lessee or an owner. And his negotiations with anybody, just anybody that might come along, is totally irrelevant in this case. Insofar as it shows at this point, All State Linen Service had no interest, right, title, or anything else with respect to the property in question.
"MR. ACKER: If the Court please, I think the burden is on him to show that there is no relationship, rather than the burden on us to show there is.
"MR. HARRIS: That is a strange state of affairs, when he wants to prove a lease. We are supposed to preclude our lease, and I've got to prove that the person he entered into did not have any interest in the property?
"THE COURT: Sustain the objection."
In view of the fact that IMI, in its complaint, had alleged that Alabama Outdoor's lease was pre-existing, and exclusive, and that Alabama Outdoor had admitted this allegation and Creative had denied it, I believe that the burden of proving that the Alabama Outdoor lease was pre-existing and exclusive was on the party asserting it.
I have read the evidence and I believe that the trial court's finding that IMI failed to prove that Alabama Outdoor's lessor had any right, title or interest in the property is correct and I would affirm him on this basis.
Let me point out that I do not necessarily disagree with the principles of law set out in Part I of the majority opinion, especially if the majority holds that the purported lease of December 5, 1972, merely created a *749 tenancy at will by implication, not expressly. I would not reach this point.

ON REHEARING
FAULKNER, Justice.
On application for rehearing, the original opinion is extended.
In pertinent part, the Alabama Outdoor lease is as follows:
"for the term of Indefinite years, beginning on the 1 day of January 19 73 and ending on the year to year thereafter 19___, at the yearly rental of ____One & No/100____plus privilege Dollars ($1.00) payable in One time installments at the office of the Lessee with the right to the Lessee to extend this lease from year to year upon the same terms and conditions, the total of such extensions, however, not to exceed five years; such right of extension to be exercised by giving written notice thereof to the Lessor either by delivering the same to him personally, or by mailing the same addressed to him at his place of address shown below, or such other address as the Lessor may hereafter in writing specify, at any time during the last sixty days of the year next preceding the year for which such right of extension is exercised."
The language limiting the total extensions to five years does not make this lease certain as to term. The language is not plain and does not clearly express the parties' intent. A lease cannot be both "for the term of indefinite years" and for not more than five one-year extensions.
The typewritten language providing for indefinite year-to-year terms contradicts the printed language limiting the total extensions. The rule is well settled that where terms are inconsistent, typewritten terms control printed terms. 17 Am.Jur.2d Contracts § 271 (1964); 17A C.J.S. Contracts § 310 (1963). This court has long recognized that written matter prevails over printed matter, since it is "presumed to have commanded the stricter attention of the parties." Thornton v. Sheffield & B. R.R. Co., 84 Ala. 109, 4 So. 197 (1887). See Porter v. Henderson, 203 Ala. 312, 82 So. 668 (1919); Burton v. Steverson, 206 Ala. 508, 91 So. 74 (1921). Cf. Tit. 7A, § 3-118(b), Code of Ala. 1940 (Recomp. 1958). Since typewritten terms, like handwritten terms, represent the more deliberate and immediate expression of the parties' meaning than printed terms, typewritten terms control printed terms. See Tit. 7A, § 3-118(b), supra. Thus, the Alabama Outdoor lease was for an indefinite term and was, therefore, void for a term of years.
APPLICATION FOR REHEARING OVERRULED.
TORBERT, C.J., and MADDOX, JONES, SHORES, EMBRY, and BEATTY, JJ., concur.
BLOODWORTH and ALMON, JJ., not sitting.