This is an appeal from a judgment for the defendant in a dispute between lessor (the plaintiff) and lessee (the defendant). We reverse and remand.
The plaintiff, Billye Womack, is the owner of real property in Shelby County fronting on Waxahatchee Creek. On that property are a store/cafe, five piers, a gas pumping facility, a concrete boat launch, and a parking lot. This property, its improvements, and 11 aluminum fishing boats (all the property of Womack) are used as a commercial fishing camp known as Camp Waxahatchee.
In January of 1979, Womack and the defendant, Lillian Hyche, executed a written lease memorandum as follows:
 "I BILLYE WOMACK, LEASE TO LILLIAN HYCHE THE PROPERTY KNOWN AS 'CAMP WAXAHATCHEE', FOR THE SUM OF ($300.00) THREE HUNDRED DOLLARS PER YEAR, WITH THE OPTION TO RENEW THE LEASE AS LONG AS THE CAMP IS RUN AS A BUSINESS FOR A PROFIT. I WILL ALSO DEFEND ANY PREVIOUS CLAIMS AGAINST THIS PROPERTY."
This written agreement, "with further oral understandings," allowed Hyche to lease Camp Waxahatchee from Womack in return for the $300.00 per year rental fee plus one-half of the funds received from boat rentals and launch fees and for the further concession of free use of the boat launch and piers for Womack and her "tenants."[1]
By 1984 friction between Womack and Hyche had become a serious dispute as to the essentials of the lease and as to each party's performance under the lease. Womack instituted a declaratory judgment action in the Shelby County Circuit Court.
In her complaint, Womack alleged that the written lease agreement was void (1) for vagueness and uncertainty; (2) for unfairness to Womack because Hyche had violated the terms of the parties' oral *Page 834 
"understandings" and the camp was no longer run as a business for profit; (3) for lack of mutuality; (4) for violation of the rule against perpetuities; (5) for improper execution; and (6) for uncertainty of the lease term. Womack further alleged that Hyche contended that the lease was neither void nor subject to modification and that Hyche had not violated the terms of the lease; therefore, Womack alleged, Hyche maintained that Womack could not cancel the lease.
Womack requested that the trial court hold either that the lease had been breached by Hyche or that the lease was void and that Hyche was occupying the camp as a tenant at will and "subject to immediate removal . . . by process of law."
Hyche filed an "Offer of Judgment" for payment of $600 per year plus one-half of all boat rental and boat launching fees. In her answer to the complaint, Hyche asserted that because Womack paid "monies certain in the past to allow [Womack's] tenants to use said boat launching facilities and piers," and because Womack accepted late rental payments from Hyche in the past, thereby inducing Hyche to rely on such acceptance, Womack is now estopped from making her allegations of Hyche's breach of the "oral understandings" as to the free use of the launch and piers and of Hyche's late payments of monies due Womack.
After a non-jury trial, the court entered judgment in favor of the defendant, Mrs. Hyche. The trial court's order read, in part:
 "The Court having heard the testimony ore tenus and argument of counsel for the parties and considered the Exhibits filed by the parties.
 "It is the finding of this Court that the parties entered into a valid lease agreement on January 10, 1979, for a term of 1 year for the sum of $300.00 per year, with an option to renew each year as long as the camp is run as a business for a profit but not to be valid for a term in excess of 20 years in accordance with the provisions of Title 35-4-6, Code of Alabama, 1975.
 "It is therefore ORDERED, ADJUDGED, AND DECREED by the Court that the lease agreement between the parties, dated January 10, 1979, is valid and is binding on the parties for a term of year to year for the sum of $300.00 per year, with the option to renew the lease, as long as the camp is run as a business for profit for no longer term than 20 years from January 10, 1979."
The trial court denied Womack's motion for amendment or alteration of judgment, or for a new trial, and Womack filed this appeal.
Womack's argument on appeal centers on the terms of the lease itself. The language, "with the option to renew the lease as long as the camp is run as a business for profit," created a lease with an uncertain ending; therefore, the lease is void under the holding of Industrial Machinery, Inc. v. CreativeDisplays, Inc., 344 So.2d 743 (Ala. 1977):
 "A lease for a term of years must have a term certain. There must be a certain beginning and a certain ending. [Cites omitted.] The lease [in dispute] began on January 1, 1973, for a term of 'indefinite years,' ending 'year to year thereafter.' Thus, there was no certain ending, thereby rendering the lease void for a term of years." Industrial Machinery, 344 So.2d at 745.
Womack also cites the case of National Bellas Hess, Inc. v.Kalis, 191 F.2d 739 (8th Cir. 1951), cert. denied,342 U.S. 933, 72 S.Ct. 377, 96 L.Ed. 695 (1952), wherein a lease containing the provision, "for a term commencing October 1, 1943, and ending sixty (60) days after the signing of the treaty of peace upon the close of the war with Germany and/or with Japan, whichever treaty of peace is the latest," was found to be of uncertain duration. The Eighth Circuit Court of Appeals held that "it is not the certainty of the happening of the event (which is to end the term) but the certainty of the date on which the termination of the lease will take place that is the determinative factor"; therefore, the lease had no fixed ending and was held to be void. *Page 835 
Hyche argues that her lease with Womack has a definite ending because the lease is effective for only one year at a time. After each year the lessee is given the option to renew the lease, as long as the camp has been "run as a business for a profit." Hyche cites, as authority for her contentions, the holding in Copiah Hardware Co. v. Johnson, 123 Miss. 624,86 So. 369 (1920). There, the Mississippi Supreme Court considered a one-year lease which contained the following covenant:
 " 'With the privilege and right of the parties of the second part or their assigns to renew the lease for one year at a time or after November 1, 1918, as long as they may desire to do so at the same rental as aforesaid and on the same terms and conditions embraced in this lease.' " Copiah Hardware Co. v. Johnson, 123 Miss. at 633, 86 So. at 369.
The lease had been once renewed, and the lessee had claimed the right to continue such renewals as long as it desired. The lessor argued that a lease renewal covenant granted no more than one renewal unless the terms of the covenant expressly provided otherwise. The court agreed with the lessor, but held:
 "That renewal covenants in a lease should be so construed is undoubtedly the law, but that can avail this [lessor] nothing, for the covenant of the lease here in question in clear and unambiguous language grants to the lessees the right to renew the lease as many times as they may desire to do so. Each renewal is to run for one year, and the right to renew annually is to continue 'as long as they may desire to do so;' that is, throughout such an extent of time as they may desire to do so." Copiah Hardware Co. v. Johnson, 123 Miss. at 633, 86 So. at 369.
Hyche also finds support for her argument in the NationalBellas Hess holding cited by Womack:
 "So, agreeably to the same end, it is a good doctrine that the maxim, that is certain which can be made certain . . . is applied in resolving any doubt on whether a 'term' is granted. Thus, if the beginning is certain and if the end can be made certain by reference to some mentioned certainty, the term is granted." 191 F.2d at 740.
The lease now in dispute has a definite beginning and a definite ending period, claims Hyche; and, she claims, the right to renew the lease, provided the lessee runs the camp as a business for profit, does not affect the certainty of the one-year term of the lease.
The authorities relied on by Womack and Hyche support their basic contentions. We find, however, that these cases are distinguishable on their individual facts; and, therefore, they lead us to but one conclusion when applied to the facts of the instant case. Further, all of the cases cited are clearly in harmony with the prevailing rule of law in this area:
 "A general covenant to renew is satisfied by one renewal and will not be construed to confer the right to more than one renewal unless provision is clearly and expressly made for further renewals. So, where a provision for multiple renewals is so indefinite and uncertain as to be unenforceable, the lease is required to be construed as giving to tenants the right of but one renewal.
 "A general covenant to renew or a covenant to renew with like terms, conditions, and covenants ordinarily does not import a renewal covenant in the renewal lease, for the reason that, if a general covenant for renewal authorized the insertion of a similar covenant in the lease giving a renewal, the effect would be to create a perpetuity.
". . .
 "Perpetual leases are not favored in the law, nor are covenants for continued renewals tending to create a perpetuity, and the rule of construction is well settled that a covenant for renewal or for an additional term should not be held to create a right to repeated grants in perpetuity, unless by plain and unambiguous terms the parties have expressed such intention." 51C C.J.S. Landlord *Page 836 and Tenant § 61(a), (b), at 187-188 (1968).
In Industrial Machinery, supra, the questioned provision, that the lease was for a term of "indefinite years" and that it was to begin on January 1, 1973, and end "year to year thereafter," was no more than a general covenant to renew, there being no clear or express provision for the terms of any multiple renewals. So, too, was the renewal provision in theNational Bellas Hess lease. That lease's renewal provision, which was to be determined by the duration of World War II, was clearly too uncertain and indefinite to be enforceable. The statement from that case upon which Hyche places great reliance, while setting out a valid legal concept, did not change the holding in that case — nor does it here. Just as the date of the signing of a peace treaty was uncertain to the contracting parties in 1943, so was the time at which the books of Camp Waxahatchee could begin to show a loss uncertain to the instant parties.
The Mississippi Supreme Court did enforce the renewal clause in the Copiah Hardware lease, but expressly held that the provision in question had been drafted in "clear and unambiguous language" which could not be "disregarded" in ascertaining the intention of the parties. "[A]s long as the camp is run as a business for a profit" does not reach the level of the "clear and unambiguous language" required to save the renewal clause at issue in the instant case and make it enforceable.
The lease for Camp Waxahatchee contains a renewal clause which provides no clear expression of the terms of further renewals; rather, it is so indefinite and uncertain in its terms as to be unenforceable. Further, perpetual leases and the covenants which create such leases are not favored, and courts will not enforce such covenants unless the parties have, by plain and unambiguous terms, expressed their intention to create such a lease. Waldrop v. Siebert, 286 Ala. 106,237 So.2d 493 (1970); 51C C.J.S., Landlord and Tenant, supra.
The terms of the renewal provision at issue here, because they are ambiguous, tend to create a perpetuity without that requisite plain expression of the parties that a perpetuity was intended. Therefore, the lease is to be construed as having given to Womack and Hyche the right of one renewal; and, under Alabama law, the provision for renewal was completely performed upon the parties' first renewal of the lease at the end of Hyche's first year of operating the camp (January 1980).[2]Alabama Butane Gas Co. v. Tarrant Land Co., 244 Ala. 638,15 So.2d 105 (1943); Indian Head Mills v. Hamilton, 212 Ala. 97,101 So. 747 (1924); Copiah Hardware Co. v. Johnson, supra; 51C C.J.S., Landlord and Tenant, supra.
Because the Womack/Hyche lease had no certain ending, thus rendering the lease void as a tenancy for years, a tenancy at will was created. "Where the end of the term is indefinite and uncertain there is no valid lease for a term of years, but an estate at will is thereby created. 3 Thompson on Real Property § 1088 (1959); National Bellas Hess, Inc., [supra]. The question, therefore, is for what period of time was the tenancy at will in existence." Industrial Machinery, Inc., 344 So.2d at 745. The tenancy at will resulting from the void lease between Womack and Hyche began at the close of the first renewal term of the lease, that is, in January 1981.
Womack, in her complaint, seeks to terminate the tenancy and asks for immediate removal of Hyche. Ala. Code 1975, § 35-9-3, requires either party to a tenancy at will, in order to terminate the tenancy, to give 10 days' notice in writing to the other party. This, however, applies only to tenancies which are expressly tenancies at will, which is not the case here.Industrial *Page 837 Machinery, supra; § 35-9-3. Hyche was a tenant at will by implication only and the termination of her tenancy is governed by the common law. She is, therefore, entitled to reasonable notice to quit the premises leased from Womack. Rutledge v.White, 206 Ala. 329, 89 So. 599 (1921); 51C C.J.S., Landlordand Tenant, § 173.
We find that the lease agreement between Womack and Hyche, by its terms, ended at the close of the year following the parties' first yearly renewal of the lease. After January, 1981, the parties continued under a tenancy at will, and Womack is now entitled to an order requiring Hyche's immediate vacation of the premises known as Camp Waxahatchee. The judgment is reversed, and this cause is remanded for entry of an order requiring Hyche to vacate the leased premises within such time as the trial court shall determine to be reasonable.
REVERSED AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and SHORES and STEAGALL, JJ., concur.
ADAMS, J., concurs specially.
[1] Womack also owns the property adjoining Camp Waxahatchee. Womack lives on the adjoining property and rents lots thereon to approximately 11 tenants.
[2] For an excellent discussion of waiver of a lease provision and its results, see Lott v. Douglas Oil Purchasing Co.,501 So.2d 1195 (Ala. 1986).