On June 3, 1974, Linton Coal Company, Inc. ("Linton Coal"), leased certain land in Jefferson County to Hallmark Coal Company, Inc. ("Hallmark Coal"), for the express purpose of mining and removing coal. The lease was for an initial term of five years, after which the lessee had the option of extending the lease for additional successive five-year terms "so long as there is recoverable coal remaining in the lands leased hereby."
Hallmark Coal assigned its rights under the lease to Alabama By-Products Corporation ("ABC") on June 14, 1974, and, on June 10, 1983, ABC assigned its rights to Casgar Coal Company, now known as South Central Resources, Inc.[1] In June and September 1974 and from May until September 1975, ABC mined 6,700 tons and 36,000 tons of coal, respectively. In July and August 1984, South Central Resources mined approximately 2,500 tons of coal. Since August 1984, however, no coal has been mined on the land in spite of the fact that when Linton Coal entered into the initial lease with Hallmark Coal in 1974, there were about 5,398,245 tons of coal reserves on the property. South Central Resources subleased two sections of the land on May 28, 1987, to A C Excavators, Inc., which was owned by Charles Cupps.
Pursuant to a provision in the original lease, the minimum annual royalty payment of $12,000 was to increase by 20% at the end of the second five-year term. Sometime in August 1987, Jon Fleming, the president of Linton Coal at that time, realized that South Central Resources was several thousand dollars in arrears in its annual royalty payment because the 20% increase should have gone into effect in *Page 912 
June 1984. In a letter dated August 11, 1987, Fleming requested that South Central Resources pay the amount owed, which South Central Resources failed to do. After repeated attempts to collect the money, Fleming informed South Central Resources by a letter dated September 23, 1987, that the lease was suspended until the delinquent amount was paid.
On December 13, 1987, Cupps purchased the stock of South Central Resources and became its president. In February 1988, he mailed a $6,000 check to Linton Coal for the arrearage. Linton Coal negotiated neither that check nor any of the checks it received from South Central Resources representing the minimum 1988 royalty payment. Linton Coal also refused to allow South Central Resources to mine any of the property.
As a result, South Central Resources, A C Excavators, and Cupps sued Linton Coal on May 13, 1988, seeking specific performance under the lease; a declaratory judgment that the lease, all assignments, and the sublease were valid and enforceable; and damages for fraud. After a hearing at which evidence was presented ore tenus, the trial court held that the lease was valid and that, in essence, Linton Coal was estopped from arguing that the lease was void because, pursuant to the lease, Linton Coal had accepted over $192,000 in minimum royalty payments and had allowed the lease to run for approximately 13 years without terminating it, even though very little mining had been done on the property. Pursuant to a joint motion of the parties, the trial court ordered all future royalty payments to be paid to the clerk of the court. In its judgment, the trial court awarded those payments to Linton Coal, and in a clarification of its final judgment, the trial court ordered South Central Resources to continue paying the royalties into court, pending the disposition of the case on appeal.
Linton Coal's main argument on appeal, as it was below, is that the lease is void because it does not contain a "term certain," or definite ending date, and Linton Coal citesWomack v. Hyche, 503 So.2d 832 (Ala. 1987), as being dispositive of this case. In Womack, this Court held that a lease containing a provision that gave the lessee of a fishing camp the option to renew the lease "as long as the camp is run as a business for a profit" was void because the term of the lease was uncertain. In reaching that conclusion, we citedNational Bellas Hess, Inc. v. Kalis, 191 F.2d 739 (8th Cir. 1951), cert. denied, 342 U.S. 933, 72 S.Ct. 377, 96 L.Ed. 695
(1952), to the extent that:
 " '[I]t is not the certainty of the happening of the event (which is to end the term) but the certainty of the date on which the termination of the lease will take place that is the determinative factor.' "
Womack v. Hyche, 503 So.2d at 834.
Here, although the provision that the lease may be renewed "so long as there is recoverable coal remaining in the lands leased hereby" is more definite because the coal reserves will eventually be exhausted, the date of that occurrence is entirely uncertain. The supply might be depleted sooner or later than expected, depending on the amount of coal actually on the land, the rate of mining production, and the good faith of the lessee in mining any coal at all.
This Court agrees with Linton Coal that the term of the lease is so incapable of ascertainment that it renders the lease void as a tenancy for years and a tenancy at will is created,Womack v. Hyche, supra, and Linton Coal is entitled to an order requiring South Central Resources's immediate vacation of the land covered by the lease. This Court is unpersuaded by South Central Resources's argument that Linton Coal should be estopped from asserting that the lease is void. The record reveals that Linton Coal agreed to renewals of the lease based on assurances by South Central Resources and Cupps that the property would be mined for coal. Thus, the judgment of the trial court is reversed and this case is remanded for the trial court to refund to South Central Resources the royalties that have been paid to the clerk of the court.
REVERSED AND REMANDED. *Page 913 
HORNSBY, C.J., and SHORES, HOUSTON, KENNEDY and INGRAM, JJ., concur.
[1] Casgar Coal Company changed its name to South Central Resources, Inc., on October 17, 1984.